UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | x | |
| In re ALUMINUM WAREHOUSING ANTITRUST LITIGATION | : : : | No. 13 MD 2481 (KBF) CLASS ACTION |
| This Document Relates To: (14 Civ. 3116) (Direct Purchaser Plaintiffs). | : : : : : : : x | DIRECT PURCHASER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION BY PACORINI METALS AG TO DISMISS THE DIRECT PURCHASER PLAINTIFFS' AMENDED COMPLAINT |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................................... 1

II. STATEMENT OF FACTS ............................................................................................. 2

    A.  Conspiracy Alleged ......................................................................................... 2

    B.  Defendant Pacorini AG ................................................................................... 3

    C.  Glencore Defendants ....................................................................................... 3

    D.  Warehouse Defendants .................................................................................... 3

    E.  Pacorini AG's Warehouses ............................................................................. 3

    F.  Pacorini AG's Role in Setting LME Load-Out Rules ................................... 3

    G.  Pacorini AG's Abuse of Minimum Load-Out Rules ..................................... 4

    H.  Pacorini AG's Involvement in Aluminum Trading ....................................... 4

III. LEGAL STANDARDS ................................................................................................. 5

IV. DEFENDANT PACORINI AG'S MOTION TO DISMISS SHOULD BE
    DENIED ........................................................................................................................ 6

    A.  Plaintiffs Made Specific Allegations as to Pacorini AG ............................... 6

    B.  Pacorini AG Participated in the Conspiracy Through Ownership and
        Control Over Two Detroit-Area LME Aluminum Warehouses ...........................8

    C.  Pacorini AG Participated in Aluminum Commodities Trading Through
        Glencore .................................................................................................................8

    D.  Plaintiffs Permissibly Grouped Pacorini AG with the Glencore and
        Warehouse Defendants ..........................................................................................9

        1.  Glencore Defendants .......................................................................... 9

        2.  Warehouse Defendants .................................................................... 11

    E.  Pacorini AG Is Liable for the Acts of Its Wholly-Owned Subsidiary
        Pacorini USA ......................................................................................................12

    F.  Pacorini AG's Other Grounds for Dismissal ............................................... 13

    G.  Plaintiffs Should Be Given Leave to Amend ............................................... 13

963673_1

**Page**

V.      CONCLUSION..................................................................................................14

# TABLE OF AUTHORITIES

**Page**

## CASES

*Am. Needle, Inc. v. NFL*,
    560 U.S. 183 (2010)........................................................................................................13

*Anderson News, L.L.C. v. Am. Media, Inc.*,
    680 F.3d 162 (2d Cir. 2012), *cert. denied sub nom.*
    *Curtis Circulation Co. v. Anderson News L.L.C.*,
    _U.S._, 133 S. Ct. 846 (2013)..........................................................................................6

*Appalachian Enters. v. ePayment Solutions Ltd.*,
    No. 01 CV 11502(GBD), 2004 U.S. Dist. LEXIS 24657
    (S.D.N.Y. Dec. 8, 2004)...................................................................................................9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..........................................................................................................1

*Copperweld Corp. v. Independence Tube Corp.*,
    467 U.S. 752 (1984)........................................................................................................13

*Hennessy v. City of Long Beach*,
    258 F. Supp. 2d 200 (E.D.N.Y. 2003) ............................................................................8

*Hinds Cnty. v. Wachovia Bank N.A.*,
    700 F. Supp. 2d 378 (S.D.N.Y. 2010)........................................................................5, 9

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
    No. MD 06-1775 (JG) (VVP), 2008 U.S. Dist. LEXIS 107882
    (E.D.N.Y. Sept. 26, 2008), *aff'd in relevant part*,
    2009 U.S. Dist. 97365 (E.D.N.Y. Aug. 21, 2009) ..........................................................5

*In re Lithium Ion Batteries Antitrust Litig.*,
    No. 13-MD-2420 YGR, 2014 U.S. Dist. LEXIS 7516
    (N.D. Cal. Jan. 21, 2014) ............................................................................................6, 9

*In re Processed Egg Prods. Antitrust Litig.*,
    821 F. Supp. 2d 709 (E.D. Pa. 2011) ..............................................................................5

*In re TFT-LCD Antitrust Litig.*,
    586 F. Supp. 2d 1109 (N.D. Cal. 2008) .......................................................................5, 6

*Jenkins v. N.Y. State Banking Dep't*,
    No. 07 Civ. 6322 (JGK)(HBP), 2009 U.S. Dist. LEXIS 17375
    (S.D.N.Y. Mar. 6, 2009) ................................................................................................14

**Page**

*Kuehl v. FDIC*,
    8 F.3d 905 (1st Cir. 1993) ...................................................................................14

*Medina v. Bauer*,
    No. 02 Civ. 8837 (DC), 2004 U.S. Dist. LEXIS 910
    (S.D.N.Y. Jan. 27, 2004) .......................................................................................9

*Merrill Lynch, Pierce, Fenner & Smith v. Young*,
    No. 91 Civ. 2923 (CSH), 1994 U.S. Dist. LEXIS 2929
    (S.D.N.Y. Mar. 15, 1994) ......................................................................................9

*Precision Assocs. v. Palapina World Transp. (Holding) Ltd.*,
    No. 08-CV-42 (JG) (VVP), 2012 U.S. Dist. LEXIS 113829
    (E.D.N.Y. Aug. 13, 2012) ......................................................................................6

*Precision Assocs. v. Panalpina World Transp. (Holding) Ltd.*,
    No. 08-CV-42 (JG) (VVP), 2011 U.S. Dist. LEXIS 51330
    (E.D.N.Y. Jan. 4, 2011) ....................................................................................5, 12

*Rollins v. Maui Dreams Dive Co.*,
    No. 10-00336 HG-KSC, 2011 U.S. Dist. LEXIS 36272
    (D. Haw. Mar. 31, 2011) .....................................................................................13

*Safeway Stores, Inc. v. F.T.C.*,
    366 F.2d 795 (9th Cir. 1966) .............................................................................6, 9

*Vandervelde v. Put & Call Brokers & Dealers Ass'n*,
    344 F. Supp. 118 (S.D.N.Y. 1972) .......................................................................6

*Vanwyk Textile Sys., B.V. v. Zimmer Mach. Am.*,
    994 F. Supp. 350 (W.D.N.C. 1997) ....................................................................13

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 9 .....................................................................................................................9
    Rule 12(b)(6) ......................................................................................................6, 8
    Rule 15(a) .............................................................................................................14

## I.       INTRODUCTION

According to Pacorini Metals AG ("Pacorini AG"), Plaintiffs do nothing more than "impute collective and undifferentiated conduct to it."  Memorandum in Support of Motion by Pacorini Metals AG to Dismiss the Direct Purchaser Plaintiffs' Amended Complaint ("Mot.") at 4 (Aug. 5, 2014), Dkt. No. 521.  In fact, Plaintiffs provide specific allegations of Pacorini AG's misconduct that are more than sufficient to provide it fair notice of the antitrust claims against it.  Plaintiffs identify the individual at Pacorini AG – its CEO, Peter Marc Waszkis – who conspired with other members of the LME Warehousing Committee to maintain and abuse the load-out rules that made it possible to hoard aluminum and increase aluminum prices artificially.  Second Corrected Consolidated Amended Class Action Complaint ("DPP Comp."), ¶360 (Apr. 11, 2014), Dkt. No. 271.  Plaintiffs also explain how Pacorini AG itself owned and operated Detroit-area LME aluminum warehouses and directed those warehouses to comply with the conspiracy by slowing aluminum load-out rates as much as possible (conduct that would have been economically irrational for Pacorini AG, but for the conspiracy).  *Id.*, ¶¶133-134, 362-370, 386-391.  Pacorini AG seeks to ignore its connection with the Glencore Defendants by asserting that it does not itself trade aluminum.  Mot. at 1.  But, of course, Plaintiffs explain that Pacorini AG was a wholly-owned subsidiary of the Glencore Defendants, and understood full well the part it played in facilitating the Glencore Defendants' efforts to profit unlawfully from the artificial increase in aluminum prices.  DPP Comp., ¶¶3, 42, 73, 134, 176, 190-191, 193, 202, 206, 211, 239-240, 247.  Plaintiffs also allege that Pacorini AG paid incentives to drive  aluminum to its Vlissingen warehouses exactly as Pacorini AG and other Defendants hoarded aluminum in the United States.  *Id.*, ¶¶288, 366-370, 399-402.  Plaintiffs more than "nudge[]" Pacorini AG's involvement in the conspiracy across the line from conceivable to plausible.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The Court should deny the Motion.

963673_1

## II.     STATEMENT OF FACTS

### A.     Conspiracy Alleged

Plaintiffs allege that the London Metal Exchange Defendants (DPP Comp., ¶¶124-130), Goldman Sachs Defendants (*id.*, ¶¶116-123), the Glencore Defendants, including Defendant Pacorini AG (*id.*, ¶¶131-136), and others conspired or agreed to inflate aluminum prices, restrain aluminum supplies in LME Detroit warehouses, and provide extremely inefficient, low quality load out and other services.  *Id.*, ¶1.  The Defendants, including Pacorini AG, employed the LME, which they owned and controlled during much of the relevant period, as the vehicle to effectuate their collusion.  *Id.*, ¶¶349-370.  The LME and its membership, including Pacorini AG, governed warehouse storage, load-out requirements and other functions related to activities that affect prices, including the Midwest Premium.  *Id.*, ¶¶359-362.  Through their ownership and control of the LME and aluminum warehouses, Defendants, including Pacorini AG, agreed and conspired to fix prices of aluminum by abusing the LME's load-out rules as an output restriction.  *Id.*, ¶¶ 362-370.

The abuse of these load-out rules involved hoarding aluminum, accomplished by: (1) acquiring ownership in approximately 86.5% of the U.S. metals warehouses and key warehouses in Vlissingen, Netherlands (*id.*, ¶¶356-357, 374, 400); (2) jointly maintaining ownership of and membership in the LME for the purpose of manipulating and implementing the LME's rules in a manner that imposed output restrictions on the aluminum market (*id.*, ¶¶359-364); (3) paying incentives to aluminum owners to attract aluminum inventories to Defendants' warehouses for the purpose of hoarding aluminum and furthering the artificial shortage (*id.*, ¶¶365-367); and (4) shifting inventory among warehouses in order to comply with their own inadequate load-out rules and thus withholding available aluminum from the market to meet demand (*id.*, ¶¶363, 367).  Defendant Pacorini AG played a role in each part of this conspiracy.

### B.    Defendant Pacorini AG

Defendant Pacorini AG is a Swiss company that is owned and controlled by Glencore, a leading provider of LME-certified warehousing throughout the world, including the United States. *Id.*, ¶133.  Glencore acquired Pacorini AG in September 2010.  *Id.*, ¶134.

### C.    Glencore Defendants

Plaintiffs define the "Glencore Defendants" as including Glencore Xstrata, PLC, Pacorini AG, Pacorini Metals USA LLC ("Pacorini USA"), and Glencore Ltd.  *Id.*, ¶¶131-136.  Glencore Xstrata owns all other Glencore Defendants.  *Id.*  Pacorini AG is Glencore Xstrata's only affiliated subsidiary that owns LME-certified warehousing throughout the world, including in the United States.  *See id.*

### D.    Warehouse Defendants

Plaintiffs define the "Warehouse Defendants" as the "Goldman Defendants (through its wholly owned subsidiary Metro International), the JPMorgan Defendants (through its wholly owned subsidiaries Henry Bath & Son, Ltd. and Henry Bath LLC), and the Glencore Defendants (through its wholly owned subsidiary Pacorini Metals AG and Pacorini Metals, USA, LLC)."  *Id.*, ¶346.

### E.    Pacorini AG's Warehouses

Pacorini AG owns and operates Detroit-area warehouses through its wholly-owned subsidiary, Defendant Pacorini USA.  *Id.*, ¶¶133-134.  Pacorini AG itself owns and operates 27 of the 29 LME-registered warehouses in Vlissingen, Netherlands.  *Id.*, ¶368.

### F.    Pacorini AG's Role in Setting LME Load-Out Rules

To form and maintain Pacorini AG's agreement with the other Defendants, Pacorini AG's CEO, Peter Marc Waszkis, represented Pacorini AG (and Glencore) on the LME's Warehousing Committee, which drafted the LME's warehousing regulations.  *Id.*, ¶360.  Other members of the LME's Warehousing Committee included President of Goldman Sachs' Metro International, Chris

- 3 -

Wibbelman, and Group General Manager of JPMorgan's Henry Bath & Son Ltd., Graham Hawkins. *Id.* The LME Warehousing Committee supported the minimum load-out requirement at issue in this suit. *Id.*, ¶¶363-364. Because Defendants collectively controlled the LME, they controlled the minimum load-out rules, the maximum rental rate for aluminum storage, and who can own aluminum warehouses. *Id.*, ¶362. Defendants' control of the LME also incentivized them, as owners of the warehouses that derived substantial rental income from aluminum storage, to increase the volume of aluminum stored in LME-approved warehouses. *Id.*, ¶ 362.

### G.    Pacorini AG's Abuse of Minimum Load-Out Rules

Plaintiffs allege that Pacorini AG, along with the other Glencore Defendants, agreed with the Goldman Defendants to abuse the minimum load-out rules both in the United States and in Europe to inflate the price of aluminum artificially. *Id.*, ¶¶288, 351. Additionally, Plaintiffs allege that Pacorini AG and the other Warehouse Defendants agreed to turn a minimum load out rule into a *de facto* maximum, thereby creating unprecedented delivery delays. *Id.*, ¶¶363-364. The acts in which Pacorini AG is alleged to have participated included:

- Making and supporting minimum load-out requirements. *Id.*, ¶ 364.

- Making incentive payments to induce third parties to divert aluminum resources from productive uses to long-term storage at LME warehouses in Detroit and elsewhere. *Id.*, ¶¶351, 365. For example, Glencore (through Pacorini) offered financial incentives to parties storing aluminum at its warehouses in Vlissingen, Netherlands, which caused delays in the delivery of aluminum from that location. *Id.*, ¶¶366-368.

- Inflating premium prices. *Id.*, ¶351.

- Providing inefficient and low quality load-out services. *Id.*

- Inflating storage revenues. *Id.*

### H.    Pacorini AG's Involvement in Aluminum Trading

Pacorini AG is involved in aluminum trading through its corporate parent, Glencore Xstrata, PLC, which is a commodities trading and mining company that engages in the production, storage,

- 4 -

transportation, marketing, or trading of aluminum and other metals, as well as trading derivative products that derive their value from the underlying asset prices of aluminum.  *Id.*, ¶132.

## III.   LEGAL STANDARDS

"Individual defendants must have reasonable, not exhaustive, notice of the allegations, and such notice is achieved when the plaintiff states a plausible claim for relief against those defendants."  *In re Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d 709, 719 (E.D. Pa. 2011). Plaintiffs "are not required to plead every detail of every meeting or communication, secret or otherwise, that took place between the defendants, nor must they allege in great detail each defendant's role in the conspiracy."  *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. MD 06-1775 (JG) (VVP), 2008 U.S. Dist. LEXIS 107882, at *83 (E.D.N.Y. Sept. 26, 2008) (report & recommendation), *aff'd in relevant part*, 2009 U.S. Dist. 97365 (E.D.N.Y. Aug. 21, 2009).

Detailed, defendant-by-defendant allegations are not required.  *Hinds Cnty. v. Wachovia Bank N.A.*, 700 F. Supp. 2d 378, 394 (S.D.N.Y. 2010) (A "complaint must adequately allege the plausible involvement of each defendant and put defendants on notice of the claims against them, but it need not be detailed with overt acts by each defendant."); *Precision Assocs. v. Panalpina World Transp. (Holding) Ltd.*, No. 08-CV-42 (JG) (VVP), 2011 U.S. Dist. LEXIS 51330, at *53-*54 (E.D.N.Y. Jan. 4, 2011) (Plaintiffs "need not couch their allegations defendant-by-defendant, but they do need to allege that each individual defendant joined the conspiracy and played some role in it."); *In re TFT-LCD Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008) (detailed "'defendant by defendant'" allegations are not required).[1]

---

[1]      Unless otherwise noted, internal citations are omitted.

Once the conspiracy itself has been established, only "'"'slight evidence'"'" is necessary to connect individual defendants with the conspiracy. *Safeway Stores, Inc. v. F.T.C.*, 366 F.2d 795, 801 (9th Cir. 1966). This applies at the pleadings stage. *Precision Assocs. v. Palapina World Transp. (Holding) Ltd.*, No. 08-CV-42 (JG) (VVP), 2012 U.S. Dist. LEXIS 113829, at *126-*127 (E.D.N.Y. Aug. 13, 2012); *Vandervelde v. Put & Call Brokers & Dealers Ass'n*, 344 F. Supp. 118, 154-55 (S.D.N.Y. 1972); *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420 YGR, 2014 U.S. Dist. LEXIS 7516, at *79 (N.D. Cal. Jan. 21, 2014) ("Plaintiffs are not required to identify exactly how, when, and through whom each Defendant joined the conspiracy," but only "'that each individual defendant joined the conspiracy and played some role in it.'") (quoting *TFT-LCD*, 586 F. Supp. 2d at 1117). Thus, "[t]he choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012), *cert. denied sub nom. Curtis Circulation Co. v. Anderson News L.L.C.*, _U.S._, 133 S. Ct. 846 (2013).

## IV.    DEFENDANT PACORINI AG'S MOTION TO DISMISS SHOULD BE DENIED

### A.    Plaintiffs Made Specific Allegations as to Pacorini AG

Plaintiffs have provided ample notice to Pacorini AG by making specific allegations as to it. First, Pacorini AG participated in the conspiracy, in part through its own CEO, Peter Marc Waszkis, by creating and abusing the very LME minimum load-out rules at issue in this case. DPP Comp., ¶¶355-361. Pacorini AG's CEO, Peter Marc Waszkis, participated on behalf of Pacorini AG on the LME Warehouse Committee in which Defendants agreed to slow down the load-outs of LME warehouses. *Id.* Plaintiffs allege:

> LME warehousing regulations are drafted by the LME's Warehousing
> Committee, which is made up of the executives of various banks, trading companies
> and storage companies. Defendants, through their respective subsidiaries, each have

at least one representative on the Warehousing Committee: President of Goldman Sachs' Metro International, Chris Wibbelman; CEO of Glencore's Pacorini, Peter Marc Waszkis; and Group General Manager of JPMorgan's Henry Bath & Son Ltd., Graham Hawkins.

*Id.*, ¶360.

Further, Plaintiffs allege that "[t]he minimum load-out requirement was supported by Goldman Sachs, JPMorgan, and Glencore in their roles as owners of the LME and members of the LME Warehousing Committee." *Id.*, ¶364. Glencore was a member of the LME Warehousing Committee only through its exclusive warehousing asset, Pacorini Metals AG. Pacorini AG is certainly on notice of the identity of its own CEO when reading allegations against it. That Pacorini AG conspired with the LME and the other Warehouse Defendants to implement such a slowdown is fundamental to Plaintiffs' allegation of a global antitrust conspiracy that adversely restrained trade in the United States.

Second, Plaintiffs allege that the aluminum load-out issues in the Netherlands warehouse area was associated with the conspiracy. *Id.*, ¶¶288, 366-370, 399-402. Specifically, Plaintiffs allege that Pacorini AG paid incentives to attract aluminum to its Vlissingen warehouses (in exactly the same way that Metro attracted aluminum to its Detroit warehouses), and then restricted output of the aluminum, giving rise to unprecedented queues (again, exactly as occurred in Detroit). *Id.* Pacorini AG must have orchestrated the Netherlands warehouse area aluminum load-out delays because it owned and operated 27 of the 29 LME aluminum warehouses in Vlissingen, Netherlands. *Id.*, ¶368.

Thus, Plaintiffs' allegations against Pacorini AG are not based on its mere membership in a "trade association of sorts." Mot. at 4. Instead, they are based upon the agreements it struck with the LME and other Warehouse Defendants to institute a worldwide slowdown of aluminum load-outs at LME warehouses. DPP Comp., ¶¶355-370. Defendants, including Pacorini AG,

- 7 -

implemented those plans through their control of warehouses that they owned and controlled in the Detroit area. *Id.*, ¶¶362-370.

**B.    Pacorini AG Participated in the Conspiracy Through Ownership and Control Over Two Detroit-Area LME Aluminum Warehouses**

Contrary to Pacorini AG's contention (Mot. at 1), Pacorini AG owned Detroit-based LME-certified warehouses through its wholly-owned operating subsidiary, Pacorini USA. *Id.*, ¶¶133-134, 356.)   Pacorini AG, through Pacorini USA, slowed its load-out of aluminum.  *Id.*, ¶¶362-370. Moreover, Glencore's involvement in the conspiracy with respect to Detroit had to be through Pacorini AG, because the only Detroit-area LME Warehouses that Glencore controlled were those owned by Pacorini AG.

**C.    Pacorini AG Participated in Aluminum Commodities Trading Through Glencore**

Defendant Glencore Xstrata, PLC is one of the world's largest commodities trading and mining companies, located in Switzerland. *Id.*, ¶¶131-134.  As alleged, Glencore Xstrata purchased Pacorini AG in 2010, which "is a leading provider of LME-certified warehousing throughout the world, including the United States, where it operates through its wholly-owned subsidiary, Defendant Pacorini Metals USA LLC ('PMUSA')."  *Id.*, ¶133.  Glencore Xstrata, along with its U.S.-based commodities trading subsidiary Glencore Ltd., Pacorini Metals AG and PMUSA are thereafter defined together as "Glencore."[2]  *Id.*, ¶136.

---

[2]      Pacorini AG's assertion that the "LME Warehouse Notice Terms and Conditions cited by the Direct Purchaser Plaintiffs (DPP Comp., ¶158) provide that a warehouse may not deal in contracts (*i.e.*, trade)" (Mot. at 5 n.6), is an unsupported assertion of fact outside of the complaint that may not be considered on a Rule 12(b)(6) motion. *Hennessy v. City of Long Beach*, 258 F. Supp. 2d 200, 204 (E.D.N.Y. 2003).

- 8 -

### D.   Plaintiffs Permissibly Grouped Pacorini AG with the Glencore and Warehouse Defendants

Pacorini AG argues that Plaintiffs engaged in impermissibly broad group pleading.[3]  Mot. at 4.  As explained above, Plaintiffs do not simply group Pacorini AG with other Defendants, Plaintiffs explain the specific role Pacorini AG played.  In any case, detailed, defendant-by-defendant allegations are not required.  *See, e.g.*, *Hinds Cnty.*, 700 F. Supp. 2d at 394.  Moreover, once the Court has determined the plausibility of Plaintiffs' allegations with respect to the other Defendants, only allegations of  "slight evidence" as to Pacorini AG is required.  *Safeway Stores*, 366 F.2d at 801.  Pacorini AG's citation to *Lithium Ion Batteries*, 2014 U.S. Dist. LEXIS 7516, at *79, is inapt because there, the court found that "[n]othing in either complaint suggests that the defendant subsidiaries consciously agreed to participate in, or could be charged with knowledge of, an alleged price-fixing conspiracy conceived and undertaken in Korea and Japan."  Mot. at 4.  Here, as stated above, Plaintiffs have already made Pacorini AG-specific allegations that show conscious participation in and knowledge of the conspiracy.  The additional allegations, as discussed below, provide additional detail as to Pacorini AG's participation.

#### 1.   Glencore Defendants

The allegations against the "Glencore Defendants" that pertain to Glencore's LME warehousing practices, and Glencore's participation in the LME, necessarily apply to Pacorini AG.

---

[3]      Defendants' citations (Mot. at 4 n.5) do not hold that group pleading is generally impermissible and involve different factual circumstances.  *See Appalachian Enters. v. ePayment Solutions Ltd.*, No. 01 CV 11502(GBD), 2004 U.S. Dist. LEXIS 24657, at *3 (S.D.N.Y. Dec. 8, 2004) (finding that plaintiff "ma[d]e no attempt . . . to specifically allege what particular acts were taken by which of the defendants"); *Medina v. Bauer*, No. 02 Civ. 8837 (DC), 2004 U.S. Dist. LEXIS 910, at *18 (S.D.N.Y. Jan. 27, 2004) (plaintiffs failed to state "what [defendants] did wrong"); *Merrill Lynch, Pierce, Fenner & Smith v. Young*, No. 91 Civ. 2923 (CSH), 1994 U.S. Dist. LEXIS 2929, at *62 (S.D.N.Y. Mar. 15, 1994) (in a RICO claim subject to Federal Rule of Civil Procedure 9's heightened pleading standard, plaintiffs "never specifically allege[d] the nature of each defendant's participation in the allegedly fraudulent scheme").

963673_1

The complaint explicitly alleges that "Goldman agreed with the Glencore Defendants, who held a significant amount of the non-Goldman LME Detroit warehouse space, to follow the practices alleged here.  Glencore then began to copy those practices in Europe."  DPP Comp., ¶288.  Thus, Pacorini AG is responsible for implementing the conduct alleged against Glencore with respect to the Detroit LME warehousing practices complained of – and then implementing such practices at its warehouses in Europe – while Pacorini AG's subsidiary, Pacorini USA, was responsible for actually executing the slowdown at its Detroit warehouses.  Plaintiffs specifically allege that: (1) Pacorini AG gave Glencore power to set rules regarding aluminum warehouse load-outs by representing Glencore on the LME Warehousing Committee; and (2) Pacorini AG gave Glencore access to the Detroit-area LME warehouses themselves through Pacorini AG's two warehouses that it owned through its wholly-owned subsidiary, Pacorini USA.  *Id.*, ¶¶131-135, 288, 291, 346, 351, 354-361, 364-365, 382, 400, 406.

Similarly, the allegations that "Glencore" created the year long queues in its Vlissingen warehouses, and that Glencore "owned 27 of the 29 LME-registered warehouses in Vlissingen" and "through Pacorini, makes $150 million a year in rental charges just from aluminum backlog in its Vlissingen warehouses[,]" describe the conduct of Pacorini AG, Glencore's sole warehousing subsidiary.  *Id.*, ¶¶367-368.  Finally the allegation that "while Defendant Goldman's subsidiary Metro International owns the vast majority of the warehouse space for aluminum in Detroit, and Defendant Glencore's subsidiary Pacorini owns the vast majority of the warehouse space for aluminum in Vlissingen, neither could separately engage in the practices set forth above absent conspiracy[,]" applies specifically to Pacorini AG, which owns and operates all of Glencore's LME certified warehouse space.  *Id.*, ¶370.

Pacorini AG's exclusion of all allegations that do not explicitly name "Pacorini AG" is nonsense. Mot. at 3-4. Allegations regarding Glencore's conduct with respect to its participation in the LME Warehousing Committee or implementation of a slowdown of load-outs in Glencore's warehouses, refers specifically to Pacorini AG's conduct – Glencore's exclusive, wholly-owned, warehousing subsidiary that is solely responsible for Glencore's LME-certified aluminum warehousing activity. Pacorini AG is Glencore's only affiliated subsidiary that engages in LME-certified warehousing, and the only one that provided it a seat on the LME Warehouse Committee.

### 2.    Warehouse Defendants

The complaint also properly defines the Warehouse Defendants to include Pacorini AG. First, Pacorini AG, through its role in the LME Warehousing Committee, participated in the conduct alleged against the "Warehouse Defendants." For instance, Plaintiffs allege:

> Through their ownership of – and rulemaking role in – Defendant LME, [and] the Warehouse Defendants have been able to control the supply of aluminum, which in turn dictates the price of aluminum. By controlling the LME, Defendants collectively control the warehousing rules of the LME, including the minimum load-out rules, the maximum rental rate for aluminum storage, and who can own aluminum warehouses.

DPP Comp., ¶362. This allegation against the Warehouse Defendants pertains to their participation in the rule-making of the LME Warehousing Committee and their coordinated abuse of those rules, and Pacorini AG's CEO participated in those meetings and directed his company to implement the conspiracy.

Second, Plaintiffs allege that:

> In order for the Warehouse Defendants to maintain, expand, and exploit the aluminum "contango," while simultaneously profiting from increased and extended warehouse rents, the Warehouse Defendants needed to keep the inventory at LME warehouses as high as possible. Ownership of LME warehouses was crucial to accomplishing this goal because only LME-certified warehouses can issue and cancel LME delivery warrants.

*Id.*, ¶380.  Pacorini AG owned the warehouses necessary to issue and cancel LME delivery warrants. *Id.*, ¶¶133-134.

Third, Plaintiffs allege that the "Warehouse Defendants ensured that their inventories remained high by paying aluminum producers and traders to deposit aluminum in their warehouses, and aluminum warrant owners to continue to store their aluminum in the Warehouse Defendants' warehouses." *Id.*, ¶381.  Pacorini AG owned the very warehouses that paid aluminum producers and traders to deposit aluminum in its warehouses.  *Id.*, ¶¶133-134.

Fourth, in unison with conduct by other Warehouse Defendants in the United States, Pacorini AG paid incentives to hoard aluminum in Europe.  Plaintiffs allege that "[a]ccording to Reuters, quoting a London-based trader, '[f]resh material is being bid slightly because Pacorini are paying big incentives to get metal there, in Vlissingen.  Then they deliver it to the market and whoever holds it can't actually get it out for a year.'"  *Id.*, ¶367.

Group pleading is permissible (and efficient) where "the instances in which they are specifically identified sufficiently allege, or permit the reasonable inference, that they were members of the alleged conspiracy."  *Precision Assocs.*, 2011 U.S. Dist. LEXIS 51330, at *50.  Here, by virtue of Pacorini AG's distinct role as the exclusive owner and operator of Glencore's LME-certified warehousing, allegations against "Warehouse Defendants" pertaining to LME warehouses, the LME Warehousing Committee and the rules that govern them in both Europe and the U.S., include Pacorini AG, and Pacorini AG is on notice of those allegations against it.

### E.   Pacorini AG Is Liable for the Acts of Its Wholly-Owned Subsidiary Pacorini USA

In addition to the Pacorini AG-specific allegations, Pacorini AG is also liable for the anticompetitive acts of its wholly-owned subsidiary, Pacorini USA.  A parent and its wholly-owned subsidiary "'have a complete unity of interest' and thus '[w]ith or without a formal "agreement," the

- 12 -

subsidiary acts for the benefit of the parent, its sole shareholder.'"  *Am. Needle, Inc. v. NFL*, 560 U.S. 183, 196 (2010) (quoting *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 771 (1984)).  Not only did Pacorini AG and Pacorini USA have a complete unity of interest, Plaintiffs alleged that Pacorini AG controlled Pacorini USA's warehouses, set the rules for Pacorini USA's warehouses, and knew and financially benefitted from the consequences of Pacorini USA's conduct. DPP Comp., ¶¶3, 5, 42, 58, 133-134, 190-198, 247, 271, 288, 291, 333, 351, 355-370, 406.  *See Rollins v. Maui Dreams Dive Co.*, No. 10-00336 HG-KSC, 2011 U.S. Dist. LEXIS 36272, at *28- *29 (D. Haw. Mar. 31, 2011) (finding "adequate control over an agent when principal set the terms and prices for which agent could sell particular products") (citing *Vanwyk Textile Sys., B.V. v. Zimmer Mach. Am.*, 994 F. Supp. 350, 369 (W.D.N.C. 1997)).  Thus, it is appropriate for Plaintiffs to have grouped Pacorini AG and USA together.

### F.      Pacorini AG's Other Grounds for Dismissal

Plaintiffs also oppose Pacorini AG's argument that the DPPs lack standing and that the allegations fail to state a claim under the various state laws alleged (Mot. at 6), and hereby incorporate the briefs previously filed in this matter opposing dismissal on those grounds.  *See* Direct Purchaser Plaintiffs' Opposition to Motion by London Metals Exchange and Goldman Sachs Defendants to Dismiss Claims Against Them on the Merits and for Asserted Lack of Standing (May 27, 2014), Dkt. No. 402; Direct Purchaser Class Plaintiffs & Commercial End User Class Plaintiffs' Joint Opposition to Defendants' Joint Motion to Dismiss State Law Claims (May 27, 2014), Dkt. No. 397.

### G.      Plaintiffs Should Be Given Leave to Amend

If this Court grants Pacorini AG's Motion, it should also grant leave to amend.  Leave to amend must be freely granted unless it is clear that amendment has been delayed unduly, is sought

for dilatory purposes, the opposing party would be prejudiced, or would be futile. *Jenkins v. N.Y. State Banking Dep't*, No. 07 Civ. 6322 (JGK)(HBP), 2009 U.S. Dist. LEXIS 17375, at *8-9 (S.D.N.Y. Mar. 6, 2009). Pacorini AG's statement that "Direct Purchaser Plaintiffs have had four bites at the apple already" is wrong. Mot. at 6. Plaintiffs have filed *one* consolidated complaint with amendments to refine certain facts alleged. To date, Plaintiffs have received no feedback from the Court, through rulings on motions to dismiss, as to any alleged inadequacies contained in the complaint. *See, e.g.*, *Kuehl v. FDIC*, 8 F.3d 905, 908 (1st Cir. 1993) (when repleading involves non-substantive changes, it "does not automatically deprive the plaintiff of the one-time option to amend granted by Rule 15(a)"). To the extent that Pacorini AG's Motion is granted in full or in part, Plaintiffs should be given leave to amend to address whatever concerns the Court may have.

## V.     CONCLUSION

For the foregoing reasons, Pacorini AG's Motion to Dismiss should be denied.

DATED: August 15, 2014                    Respectfully submitted,

                                          ROBBINS GELLER RUDMAN
                                            & DOWD LLP
                                          BONNY E. SWEENEY
                                          CARMEN A. MEDICI


                                                  s/ Bonny E. Sweeney
                                          BONNY E. SWEENEY

                                          655 West Broadway, Suite 1900
                                          San Diego, CA  92101
                                          Telephone:  619/231-1058
                                          619/231-7423 (fax)

                                          ROBBINS GELLER RUDMAN
                                            & DOWD LLP
                                          SAMUEL H. RUDMAN
                                          58 South Service Road, Suite 200
                                          Melville, NY  11747
                                          Telephone:  631/367-7100
                                          631/367-1173 (fax)

- 14 -

963673_1

GRANT & EISENHOFER P.A.
LINDA P. NUSSBAUM
485 Lexington Avenue
New York, NY  10017
Telephone:  646/722-8500
646/722-8501 (fax)

LOVELL STEWART HALEBIAN
   JACOBSON LLP
CHRISTOPHER LOVELL
61 Broadway, Suite 501
New York, NY  10006
Telephone: 212/608-1900
212/719-4677 (fax)

Interim Co-Lead Counsel for Direct Purchaser
Plaintiffs and the Proposed Direct Purchaser
Class

BONSIGNORE, LLC
ROBERT J. BONSIGNORE
193 Plummer Hill Road
Belmont, NH  03220
Telephone:  781/856-7650

EMERSON POYNTER LLP
JOHN G. EMERSON
The Rozelle-Murphy House
1301 Scott Street
Little Rock, AR  72202
Telephone:  501/907-2555
501/907-2556 (fax)

GOLD BENNETT CERA & SIDENER, LLP
SOLOMON B. CERA
595 Market Street, Suite 2300
San Francisco, CA  94105
Telephone: 415/777-2230
415/777-5189 (fax)

HEINS MILLS &OLSON, P.L.C.
VINCENT J. ESADES
310 Clifton Avenue
Minneapolis, MN  55403
Telephone: 612/338-4605
612/338-4692 (fax)

- 15 -

LIEFF CABRASER HEIMANN
&BERNSTEIN LLP
DEAN M HARVEY
ERIC B. FASTIFF
LIN Y CHAN
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415/956-1000
415/956-1008 (fax)

LOWEY DANNENBERG COHEN
&HART, P.C.
GEOFFREY MILBANK HORN
GERALD LAWRENCE
PETER DEXTER ST. PHILIP , JR.
RAYMOND PETER GIRNYS
VINCENT BRIGANTI
White Plains Plaza
One North Broadway, Suite 509
White Plains, NY  10601
Telephone:  914/997-0500
914/997-0035 (fax)

MORGAN & MORGAN, P.C.
PETER GEORGE SAFIRSTEIN
28 West 44th St., Suite 2001
New York, NY  10036
Telephone:  212/564-1637
212/564-1807 (fax)

OLIVER LAW GROUP, P.C.
ALYSON L. OLIVER
950 W. University Drive, Suite 200
Rochester, MI  48307
Telephone:  248/327-6556
248/436-3385 (fax)

VANEK, VICKERS &MASINI, P.C.
JOSEPH M VANEK
DAVID P. GERMAINE
JOHN PAUL BJORK
55 W. Monroe, Suite 3500
Chicago, IL  60606
Telephone:  312/224-1500
312/224-1510 (fax)

Plaintiffs' Steering Committee for the Direct
Purchaser Plaintiffs

963673_1