**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
               :

IN RE ALUMINUM WAREHOUSING     :       MDL No. 2481
ANTITRUST LITIGATION              :

This Document Relates To:             :      Master Docket No.
               :    13-md-2481-KBF-RLE

FIRST LEVEL PURCHASER CASES    :
               :
               :
               :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANT LME HOLDINGS LIMITED'S OPPOSITION TO THE FIRST LEVEL PURCHASER PLAINTIFFS' <u>MOTION FOR LEAVE TO AMEND</u>

LATHAM & WATKINS LLP
Margaret M. Zwisler (admitted *pro hac vice*)
(*margaret.zwisler@lw.com*)
William R. Sherman
(*william.sherman@lw.com*)
Jennifer L. Giordano
(*jennifer.giordano@lw.com*)
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004
Telephone:  (202) 637-2200
Facsimile:  (202) 637-2201

*Attorneys for Defendant LME Holdings Limited*

Dated:  December 8, 2014

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ..........................................................................................2

I.  HOLDINGS IS A HOLDING COMPANY IN THE UNITED KINGDOM THAT
    HAS NO CONTACTS WITH THE UNITED STATES ........................................2

II.  HOLDINGS AND THE LME HAVE MAINTAINED THEIR SEPARATE
     CORPORATE IDENTITIES ............................................................................3

III.  THE FCA'S REGULATORY OVERSIGHT OF THE LME INCLUDES
      CHECKS ON THE INDEPENDENCE OF THE LME ......................................4

IV.  THE LME IS RESPONSIBLE FOR THE REGULATION OF ITS
     WAREHOUSES .............................................................................................5

ARGUMENT ............................................................................................................6

I.  THIS COURT LACKS PERSONAL JURISDICTION OVER HOLDINGS ...................6

    A.  Plaintiffs Do Not Allege Facts That Would Establish Personal Jurisdiction
        Over Holdings Based On Any Contacts Of Holdings With The United
        States ..................................................................................................9

        1.  Holdings Is Not "At Home" In The United States .......................................9

        2.  Holdings Has No Contacts In The United States Relating To
            Plaintiffs' Claims ...............................................................................10

    B.  Holdings Is Not Subject To The Jurisdiction Of This Court On The Basis
        Of Its Relationship With The LME .......................................................11

        1.  The Supreme Court's Opinion in Daimler Eliminates Any
            Argument That A Court Can Exercise Jurisdiction Over A Foreign
            Parent On The Basis Of The Conduct Of Its Subsidiary In The
            Forum ..............................................................................................12

        2.  Plaintiffs Have Not Alleged Any Facts Showing That The LME Is
            A Mere Department Or The Alter Ego Of Holdings ...............................13

    C.  This Court Should Reject Plaintiffs' Attempt To Manufacture Personal
        Jurisdiction Over Holdings On The Basis Of The Alleged Conspiracy Or
        Its Effects ...........................................................................................18

        1.  Plaintiffs Cannot Obtain Jurisdiction Over Holdings On The Basis
            Of The Supposed  Effects Of Its Conduct In The United States ..............18

2.      Plaintiffs Cannot Obtain Personal Jurisdiction Over Holdings On The Basis Of The Contacts Of Alleged Co-conspirators ..........................19

D.      The Exercise Of Personal Jurisdiction Over Holdings Would Be Unreasonable ...................................................................................21

E.      There Is No Basis For Jurisdictional Discovery ..................................................22

II.      EVEN IF THE COURT HAD PERSONAL JURISDICTION OVER HOLDINGS, IT SHOULD STILL DENY PLAINTIFFS LEAVE TO AMEND BECAUSE PLAINTIFFS AGAIN FAIL TO PLAUSIBLY ALLEGE THAT HOLDINGS WAS PART OF ANY CONSPIRACY ..........................................................23

A.      The Alleged Conspiracy Still Does Not Make Economic Sense ..........................23

B.      Even If The Proposed Complaint Plausibly Alleges A Conspiracy, It Still Fails To Plausibly Allege That Holdings Joined That Conspiracy .......................23

C.      The Proposed Complaint Fails To Allege That Holdings Is Liable For Any Conduct Of The LME ...........................................................................25

1.      Plaintiffs Do Not Allege Facts To Support Piercing the Corporate Veil ...........................................................................................26

2.      Plaintiffs Do Not Allege Facts To Support Vicarious Liability ................27

CONCLUSION .......................................................................................................28

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*In re Aluminum Warehousing Antitrust Litigation*,
   No. 13-MD-2481 KBF, 2014 WL 4277510 (S.D.N.Y. Aug. 29, 2014) ....................12, 23, 24

*American Needle, Inc. v. NFL*,
   560 U.S. 183, 130 S. Ct. 2201 (2010) ..................................................................................24

*Asahi Metal Indus. Co., Ltd. v. Superior Court of California*,
   480 U.S. 102 (1987)..............................................................................................................21

*Best Van Lines, Inc. v. Walker*,
   490 F.3d 239 (2d Cir. 2007)..................................................................................................22

*Bodum U.S.A., Inc. v. Hantover, Inc.*,
   No. 11 Civ. 8702, 2012 WL 1309176 (S.D.N.Y. Apr. 16, 2012)..........................................10

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985)..............................................................................................................10

*Calder v. Jones*,
   465 U.S. 783 (1984)........................................................................................................18, 19

*Central States, S.E. & S.W. Areas Pension Fund v. Reimer Express World Corp.*,
   230 F.3d 934 (7th Cir. 2000) ................................................................................................16

*Chew v. Dietrich*,
   143 F.3d 24 (2d Cir. 1998)....................................................................................................13

*Chloé v. Queen Bee of Beverly Hills, LLC*,
   616 F.3d 158 (2d Cir. 2010)..................................................................................................21

*Concord Associates, L.P. v. Entertainment Properties Trust*,
   No. 12-cv-1667 (ER), 2014 WL 1396524 (S.D.N.Y. Apr. 9, 2014) ......................................24

*Copperweld Corp. v. Independence Tube Corp.*,
   467 U.S. 752 (1984)..............................................................................................................25

*Daimler AG v. Bauman*,
   134 S. Ct. 746 (2014).....................................................................................................9, 10, 12

*Daniel v. American Board of Emergency Medicine*,
   428 F.3d 408 (2d Cir. 2005)....................................................................................................7

*Dardana Ltd. v. Yuganskneftegaz*,
   317 F.3d 202 (2d Cir. 2003)....................................................................................................8

*Dejesus v. Sears, Roebuck & Co.*,
    87 F.3d 65 (2d Cir. 1996) ...................................................................................26

*Fagan v. Republic of Austria*,
    No. 08 CIV. 6715 LTS JCF, 2011 WL 1197677 (S.D.N.Y. Mar. 25, 2011).........13

*Gallelli v. Crown Imports, LLC*,
    701 F. Supp. 2d 263 (E.D.N.Y. 2010) ...................................................... *passim*

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    131 S. Ct. 2846 (2011).................................................................................9, 10

*Gurvey v. Cowan, Liebowitz, & Latman, PC*,
    No. 06 Civ.1202, 2009 WL 691056 (S.D.N.Y. Mar. 17, 2009) ......................15, 28

*Harte v. Ocwen Financial Corp.*,
    No. 13-CV-5410 (MKB), 2014 WL 4677120 (E.D.N.Y. Sept. 19, 2014).............26

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984)...........................................................................................8

*Insight Data Corp. v. First Bank Systems, Inc.*,
    No. 97 CIV. 4896 (MBM), 1998 WL 146689 (S.D.N.Y. Mar. 25, 1998).............14

*Jazini v. Nissan Motor Co., Ltd.*,
    148 F.3d 181 (2d Cir. 1998).........................................................6, 12, 14, 22

*JLB Equities, Inc. v. Ocwen Financial Corp.*,
    131 F. Supp. 2d 544 (SDNY 2001)...........................................16, 17, 18

*Kingston Dry Dock Co. v. Lake Champlain Transport Co.*,
    31 F.2d 265 (2d Cir. 1929)................................................................................26

*KM Enterprises, Inc. v. Global Traffic Technologies, Inc.*,
    725 F.3d 718 (7th Cir. 2013) .............................................................................7

*L'Europeenne de Banque v. La Republica de Venezuela*,
    700 F. Supp. 114 (S.D.N.Y. 1988).....................................................................14

*LaCourte v. JP Morgan Chase & Co.*,
    No. 12 Civ. 9453 (JSR), 2013 WL 4830935 (S.D.N.Y. Sept. 4, 2013)............26, 27

*Langenberg v. Sofair*,
    No. 03 cv 8339, 2006 WL 2628348 (S.D.N.Y. Sept. 11, 2006) ........................22

*Leasco Data Processing Equip. Corp. v. Maxwell*,
    468 F.2d 1326 (2d Cir. 1972), *abrogated on other grounds by Morrison v.
    National Australia Bank Ltd.*, 130 S. Ct. 2869 (2010) .....................................18

*Licci v. Lebanese Canadian Bank*,
 673 F.3d 50 (2d Cir. 2012)................................................................6

*In re Magnetic Audiotape Antitrust Litigation*,
 171 F. Supp. 2d 179 (S.D.N.Y. 2001), *rev'd on other grounds*, *Tex. Int'l
 Magnetic, Inc. v. BASF Aktengesllschafft*, 31 F. App'x 738 (2d Cir. 2002)...........................14

*Maung Ng We v. Merrill Lynch & Co.*,
 No. 99 Civ. 9687 (CSH), 2000 WL 1159835 (S.D.N.Y. Aug. 15, 2000).............................27

*Monsanto Co. v. Spray-Rite Serv. Co.*,
 465 U.S. 752 (1984)................................................................24

*National Gear & Piston, Inc. v. Cummins Power Systems, LLC*,
 975 F. Supp. 2d 392 (S.D.N.Y. 2013).....................................................26

*NovelAire Technologies, L.L.C. v. Munters AB*,
 No. 13 CIV. 472 CM, 2013 WL 6182938 (S.D.N.Y. Nov. 21, 2013)....................................15

*Peterson v. Islamic Republic of Iran*,
 No. 10 Civ. 4518, 2013 U.S. Dist. LEXIS 40470 (S.D.N.Y. Mar. 13, 2013)
 (Forrest, J.), *aff'd.*, 758 F.3d 185 (2d Cir. 2014) ....................................7

*Porina v. Marward Shipping Co.*,
 521 F.3d 122 (2d Cir. 2008)................................................................8, 9

*Reers v. Deutsche Bahn AG*,
 320 F. Supp. 2d 140 (S.D.N.Y. 2004).......................................................13

*In re Roman Catholic Diocese*,
 745 F.3d 30 (2d Cir. 2014)................................................................9, 10

*Samantar v. Yousuf*,
 560 U.S. 305, 130 S. Ct. 2278, 176 L. Ed. 2d 1047 (2010)....................................18

*In re Satyam Computer Services Ltd. Securities Litigation*,
 915 F. Supp. 2d 450 (S.D.N.Y. 2013)..........................................................19, 20

*Saudi v. Marine Atlantic, Ltd.*,
 306 F. App'x 653 (2d Cir. 2009) .......................................................10

*SODEPAC, S.A. v. CHOYANG PARK in rem*,
 No. 02 CIV. 3927 (SAS), 2002 WL 31296341 (S.D.N.Y. Oct. 10, 2002) ...........................13

*Sonera Holding B.V. v. Cukurova Holding A.S.*,
 750 F.3d 221 (2d Cir. 2014)................................................................9, 10, 12

*Spagnola v. Chubb Corp.*,
 264 F.R.D. 76 (S.D.N.Y. 2010) ........................................................27

*Tarsavage v. Citic Trust Co., Ltd.*,
  3 F. Supp. 3d 137, 146-47 (S.D.N.Y. 2014) (Forrest, J.)....................................19, 20

*In re Terrorist Attacks on September 11, 2001*,
  538 F.3d 71 (2d Cir. 2008)........................................................................18

*Troma Entertainment, Inc. v. Centennial Pictures Inc.*,
  729 F.3d 215 (2d Cir. 2013)........................................................................6

*Tymoshenko v. Firtash*,
  No. 11-cv-2794 (KMW), 2013 U.S. Dist. LEXIS 43543 (S.D.N.Y. Mar. 26,
  2013) ..................................................................................................22

*United Mobile Technologies, LLC v. Pegaso, Sa. de C.V.*,
  509 F. App'x 48 (2d Cir. 2013) .....................................................................7

*United States v. Bestfoods*,
  524 U.S. 51 (1998)...................................................................................25

*In re Vitamin C Antitrust Litigation*,
  2012 WL 2930109 (E.D.N.Y. July 18, 2012) ..........................................................7

*Walden v. Fiore*,
  134 S. Ct. 1115 (2014)...............................................................................10

*Williams v. McAllister Bros. Inc.*,
  534 F.2d 19 (2d Cir. 1976)...........................................................................26

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980)..................................................................................19

*Xiu Feng Li v. Hock*,
  371 F. App'x 171 (2d Cir. 2010) ....................................................................22

**STATUTES**

15 U.S.C. § 22................................................................................................7

**RULES**

Fed. R. Civ. P. 4(k)(1).............................................................................7, 13, 14

Fed. R. Civ. P. 4(k)(2)..........................................................................7, 8, 13, 14

Defendant LME Holdings Limited ("Holdings"), appearing specially and without consenting to this Court's jurisdiction or waiving the objections and defenses set forth here, respectfully submits this memorandum in opposition to the First Level Purchasers' ("plaintiffs") Motion for Leave to Amend.

## PRELIMINARY STATEMENT

Plaintiffs' attempt to replead against Holdings in their proposed Third Amended Complaint ("TAC") fails to show that this Court can assert personal jurisdiction over Holdings. Holdings, as its name implies, is a holding company organized under the laws of the United Kingdom. Its sole function is to hold the shares of the LME. Since it is not an operational entity, plaintiffs cannot establish that it is "at home" in the United States and therefore do not allege a basis for the Court to find that it has general jurisdiction over Holdings. Plaintiffs also have not alleged that Holdings itself engaged in conduct directed at this forum (or any conduct whatsoever) that relates to the claims in this lawsuit – nor could they, as Holdings is merely an investment holding company without any employees. Moreover, plaintiffs have not alleged facts that would permit this Court to assert personal jurisdiction over Holdings based upon its ownership of the LME, because plaintiffs simply cannot get around the fact that Holdings and the LME have maintained their corporate forms and separate identities. To the extent that plaintiffs seek to invoke the "effects test" or a theory of conspiracy jurisdiction, those attempts also fail to provide a basis for this Court to exercise personal jurisdiction over Holdings.

The claims against Holdings must also be dismissed because plaintiffs still have failed to address the defects that led the Court to dismiss their prior complaint and have failed to allege facts that would plausibly tie Holdings to any alleged conspiracy. Despite the Court's warning that plaintiffs needed to allege more with respect to Holdings should they choose to include it in

an amended complaint, plaintiffs' allegations still fall far short of plausibly alleging Holdings's connection to the claims in this case.

Thus, with respect to the proposed claims against Holdings, plaintiffs' motion for leave to amend should be denied as futile.

## STATEMENT OF FACTS

The following facts are drawn from the Declaration of Marcos Castro, dated December 8, 2014 ("Castro Decl.") and the Declaration of Nicholas David Ong-Seng, dated December 8, 2014 ("Ong-Seng Decl."):

## I.   HOLDINGS IS A HOLDING COMPANY IN THE UNITED KINGDOM THAT HAS NO CONTACTS WITH THE UNITED STATES

Holdings is organized under the laws of the United Kingdom and is headquartered in London, England.  Castro Decl. ¶ 5.  Prior to HKEx's acquisition of Holdings in December 2012, the LME was a company limited by guarantee and Holdings was its sole guarantor and had been since 2000.  *Id.* ¶ 3.

After the HKEx acquisition, Holdings became the sole shareholder of the LME.  It is now and has always been an entity with the sole function of holding the ownership of the LME.  Since it is a holding company, it does not manufacture or sell products or services.  *Id.* ¶ 4.

Holdings is not found, and does not transact business, in the United States:

- Holdings does not transact, and has never transacted, any business in the United States.  *Id.* ¶ 9;

- Holdings does not maintain, and has never maintained, offices or branches in the United States.  *Id.* ¶ 10;

- Holdings does not own, and has never owned, any subsidiary located in the United States.  *Id.* ¶ 11;

- Holdings does not own or lease, and has never owned or leased, any real property in the United States. *Id.* ¶ 14;

- Holdings does not employ, and has never employed, individuals or agents in the United States. *Id.* ¶ 15;

- Holdings does not have a designated agent for service of process in the United States. *Id.* ¶ 16;

- Holdings does not have an address or phone number in the United States. *Id.* ¶ 17;

- Holdings does not manufacture or sell products into the United States. *Id.* ¶ 18;

- Holdings does not have a bank account in the United States. *Id.* ¶ 19;

- Holdings does not receive income in the United States. *Id.* ¶ 20;

- Holdings does not pay, and has never paid, taxes in the United States. *Id.* ¶ 21; and

- Holdings does not conduct officer or board meetings in the United States. *Id.* ¶ 22.

As was the case with their prior complaint, plaintiffs' proposed TAC does not identify a single contact that Holdings has with the United States.[1]

## II.   HOLDINGS AND THE LME HAVE MAINTAINED THEIR SEPARATE CORPORATE IDENTITIES

Both before and after the December 6, 2012, acquisition of Holdings and the LME by the Hong Kong Exchanges & Clearing Limited ("HKEx"), Holdings and the LME have maintained separate corporate identities and operations. The following facts establish that conclusion:

- Holdings has separate Articles of Association from the LME. Castro Decl. ¶ 27.

- Holdings and the LME conduct separate board meetings and maintain separate board minutes. *Id.* ¶¶ 33-34.

---

[1] In Paragraph 84 of the proposed TAC, plaintiffs attempt to incorporate all of their past jurisdictional arguments by reference. But as Holdings demonstrated in its prior briefing, nothing plaintiffs argued with respect to Holdings, its relationship with the LME, or its shareholders suggested a basis for the Court to assert personal jurisdiction over Holdings. *See* Def.'s Reply Supp. Mtn. Dismiss, Dkt. No. 467 at 3-11.

- The LME has over 300 employees and contractors dedicated solely to the LME.  Ong-Seng Decl. ¶ 19.

- Holdings and the LME maintain separate bank accounts.  Castro Decl. ¶ 28.

- The LME operates its day-to-day business operations without financial assistance from Holdings.  Ong-Seng Decl. ¶ 21.

- Holdings does not guarantee the LME's loans or credit arrangements.  Castro Decl. ¶ 29.

- Holdings does not pay the salaries of LME employees or executives.  *Id*. ¶ 31.

- Holdings does not have contracts with warehouses in the United States, does not itself derive revenue from any LME-approved warehouses in the United States, and has no employees who perform any functions at all, let alone any functions relating to LME-approved warehouses in the United States.  *Id*. ¶ 23.

III.    **THE FCA'S REGULATORY OVERSIGHT OF THE LME INCLUDES CHECKS ON THE INDEPENDENCE OF THE LME**

The LME is subject to significant oversight and regulation by the government of the United Kingdom.  That oversight and the associated regulations include a number of provisions that ensure that the LME, as the entity subject to that regulatory oversight, will remain suitable to satisfy its obligations as a Recognised Investment Exchange ("RIE").

The LME is an RIE within the meaning of Section 285 of the Financial Services and Markets Act 2000 ("FSMA").  Ong-Seng Decl. ¶ 2 (citing Section 285 of the FSMA); Ex. A, FSMA Section 285.  That means that the LME maintains a recognition order granted by the Financial Conduct Authority ("FCA").  Ong-Seng. Decl. ¶ 2 (citing Section 290 of the FSMA); Ex. A, FSMA Section 290.  The LME must keep that recognition order in force to maintain its RIE status, and to do that the LME must meet the Recognition Requirements.  Ong-Seng Decl. ¶ 4; Ex. B, The FSMA (Recognition Requirement for Investment Exchanges and Clearing Houses) Regulations 2001 (2001/995), as amended ("Recognition Requirements").  Under the Recognition Requirements the LME is statutorily obligated to be "a fit and proper person to

4

perform the functions of [an RIE]." Ong-Seng Decl. ¶ 5; Ex. B, Recognition Requirements sch. ¶ I.2(1). Pursuant to the FSMA and the Recognition Requirements, the FCA is the body that determines whether the LME meets this "suitability" requirement, and it does so, in part, based on the nature of the LME's "connection with any person," including its corporate parent. Ong-Seng Decl. ¶ 6; Ex. B, Recognition Requirements sch. ¶ I.2(2).

The FCA has a sourcebook that describes the FCA's regulation and supervision of RIEs like the LME, including how the FCA assesses whether an RIE meets its suitably requirement. *See* Ong-Seng Decl. ¶ 7. For example, the REC sourcebook addresses the continuing operations and management of the RIE. REC § 2.4.5(4) authorizes the FCA to assess the "extent to which the [RIE] operates as a distinct entity notwithstanding its connection with any person," including a corporate parent. Ong Seng Decl. ¶ 8; Ex. C, REC Sourcebook § 2.4.5(4). Similarly, REC § 2.4.5(5) allows the FCA to consider "the extent to which the [RIE] is responsible for its day-to-day management and operations." Ong-Seng Decl. ¶ 8; Ex. C, REC Sourcebook § 2.4.5(5).

The REC sourcebook also addresses potential conflicts of interest for certain members of an RIE, including the board of directors. Ong-Seng Decl. ¶ 9. REC § 2.5.10 addresses the extent to which any board member may be "influenced in his action by an interest or association of his own, whether personal or business or employment related," and REC § 2.5.13 ensures that the RIE "structure[s] itself" and "allocate[s] responsibility for decisions" so that it makes proper regulatory decisions despite any conflicts. Ong-Seng Decl. ¶ 9. Ex. C, REC Sourcebook § 2.5.10; *id.* § 2.5.13.

## IV.    THE LME IS RESPONSIBLE FOR THE REGULATION OF ITS WAREHOUSES

The Board of the LME is the ultimate decision-making body within the LME. Ong-Seng. Decl. ¶ 11. That Board consists of nine members, five of whom are independent, non-executive directors. *Id.* ¶ 12. The LME Board delegates the day-to-day responsibility for the operation of

5

the LME to the LME Executive Committee ("EXCOM"), a sub-committee of the LME Board. *Id.* ¶¶ 10, 13.  EXCOM consists of eleven members, all of whom are based in London and only one of whom also has any affiliation with Holdings.  *Id.* ¶ 13.  The LME has twelve operational committees, including the Warehousing Committee, that make recommendations to EXCOM. *Id.* ¶ 14.  The Warehousing Committee has no member affiliated with Holdings.  *Id.* ¶ 17.  The LME Board has delegated to EXCOM the initial consideration of recommendations from operational committees such as the Warehousing Committee and the power to implement many of those recommendations.  *Id.* ¶ 16.

The Warehousing Committee considers a number of issues relating to warehousing, including "industry views" and "changes to industry structures."  *Id.* ¶ 15.  It also makes recommendations to EXCOM "on warehousing related policy issues."  *Id.* ¶ 15. Recommendations are made by a majority vote of the Warehousing Committee, and EXCOM has the ultimate authority to "accept, reject or modify any recommendations made to it."  *Id.* ¶ 16.

**ARGUMENT**

## I.  THIS COURT LACKS PERSONAL JURISDICTION OVER HOLDINGS

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must allege facts that, if credited as true, would make a prima facie showing that jurisdiction exists.  *Troma Entm't, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013).  While a court must construe the pleadings in the light most favorable to the plaintiffs, it is not required to credit "conclusory statements . . . without any supporting facts," *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998), or "accept as true a legal conclusion couched as a factual allegation."  *Licci v. Lebanese Canadian Bank*, 673 F.3d 50, 59 (2d Cir. 2012) (citation omitted). Moreover, the Court is only "required to accept the allegations in the complaint as true so long as

they are uncontroverted by defendant's affidavits." *Peterson v. Islamic Republic of Iran*, No. 10 Civ. 4518, 2013 U.S. Dist. LEXIS 40470, at *67 (S.D.N.Y. Mar. 13, 2013) (Forrest, J.), *aff'd.,* 758 F.3d 185 (2d Cir. 2014).

Because Holdings is not subject to personal jurisdiction pursuant to New York law (or any other state's courts of general jurisdiction)[2] and plaintiffs' claims arise under federal antitrust law, plaintiffs must show that they have pleaded a basis for personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2).[3]  They fail to do so.

---

[2] Plaintiffs may not rely upon the Clayton Act's worldwide service of process provision, 15 U.S.C. § 22, to support their allegations of personal jurisdiction over Holdings, (*see* proposed TAC ¶ 26), because that provision is unavailing where plaintiffs have not established that the action is brought in the district where Holdings resides, is found, or transacts business.  *See Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 425, 427 (2d Cir. 2005) (holding that "the extraterritorial service provision of Clayton Act Section 12 may be invoked to establish personal jurisdiction . . . only when the action is brought in the district where the defendant resides, is found, or transacts business").  It is clear that Holdings does not reside and is not found in the Southern District of New York, *see* Castro Decl. ¶¶ 5-24, and plaintiffs allege nothing to the contrary.  Moreover, plaintiffs have not alleged any facts demonstrating the "practical everyday business or commercial concept of doing business or carrying on business of any substantial character" necessary to show that Holdings, a foreign holding company, is transacting business in the Southern District of New York.  *Daniel*, 428 F. 3d at 430 (rejecting mere solicitation of business from a forum or intermittent contacts as sufficient) (citation omitted); *KM Enterprises, Inc. v. Global Traffic Techs., Inc.*, 725 F.3d 718, 730-32 (7th Cir. 2013) (rejecting the invocation of "nationwide venue" and looking to transaction of business in the district).  Plaintiffs also have not alleged any facts that would show that the LME transacts business in the Southern District of New York, and thus plaintiffs cannot attempt to obtain jurisdiction over Holdings through that relationship.  *Cf. In re Vitamin C Antitrust Litig.*, 2012 WL 2930109 (E.D.N.Y. July 18, 2012) (exercising personal jurisdiction over parent where court found that subsidiary was transacting business in relevant district and borders between parent and subsidiary were "permeable" and observance of corporate formalities was "scarce").

[3]  In their prior briefing, Plaintiffs asserted jurisdiction over Holdings based on Fed. R. Civ. P. 4(k)(2).  Pls. Mem. in Opp'n., Dkt. No. 481 at 9-10.  Thus, Holdings addresses here the jurisdictional inquiry under Fed. R. Civ. P. 4(k)(2) and Holdings's contacts with the United States as a whole.  The absence of contacts with the United States also demonstrates that Holdings lacks sufficient contacts to be subject to personal jurisdiction in this Court under Fed. R. Civ. P. 4(k)(1) based on New York's long arm jurisdiction.  *See United Mobile Techs., LLC v. Pegaso, Sa. de C.V.*, 509 F. App'x 48, 50 (2d Cir. 2013) (requiring defendant be "engaged in continuous, permanent, and substantial activity in New York").  Lest there be any doubt,

Federal Rule of Civil Procedure 4(k)(2) permits a federal district court to exercise personal jurisdiction over Holdings only if exercising jurisdiction is "consistent with the United States Constitution and laws." *Porina v. Marward Shipping Co.*, 521 F.3d 122, 127 (2d Cir. 2008) (quoting Fed. R. Civ. P. 4(k)(2)). Rule 4(k)(2) "confers personal jurisdiction over a defendant so long as the exercise of jurisdiction comports with the Due Process Clause of the Fifth Amendment." *Dardana Ltd. v. Yugoskneftegaz*, 317 F.3d 202, 207 (2d Cir. 2003); *Porina*, 521 F.3d at 127. But the exercise of jurisdiction over Holdings here, or anywhere in the United States, would not comport with constitutional due process.

The due process inquiry involves two steps. First, the Court considers "whether the defendant has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction." *Porina*, 521 F.3d at 127. Under Rule 4(k)(2), the forum in question is the United States (as opposed to New York or any other state) because plaintiffs claim subject matter jurisdiction under the federal question statute. *Id.* A plaintiff may satisfy this "minimum contacts" standard by establishing either (1) "general jurisdiction" based on the defendant's "'continuous and systematic general business contacts' with the United States," or (2) "specific jurisdiction" in which the claims are "arising out of or related to the defendant's contacts with the forum." *Id.* at 127-28 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). Second, if the plaintiff shows that the defendant has sufficient minimum contacts, the court considers whether exercising personal jurisdiction "is reasonable under the circumstances of the particular case." *Id.*

---

Holdings does not have sufficient contacts with any state, including New York, to be subject to personal jurisdiction there.

### A.   Plaintiffs Do Not Allege Facts That Would Establish Personal Jurisdiction Over Holdings Based On Any Contacts Of Holdings With The United States

#### 1.   Holdings Is Not "At Home" In The United States

Holdings is a holding company in the United Kingdom that has no operational functions. Thus, it has no actual contacts with the United States that would subject it to general jurisdiction here.  The "paradigm forum for the exercise of general jurisdiction" over a corporation is its "place of incorporation" and "principal place of business."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853-54 (2011); *see also In re Roman Catholic Diocese*, 745 F.3d 30, 38-39 (2d Cir. 2014) (noting only a limited set of circumstances warranting general jurisdiction).  "[G]eneral jurisdiction extends beyond an entity's state of incorporation and principal place of business only in the exceptional case where its contacts with another forum are so substantial as to render it 'at home' in that state." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 223 (2d Cir. 2014) (citing *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014)).

Holdings clearly is not "at home" in the United States, and plaintiffs fail to allege facts that would permit the Court to hold otherwise.  Holdings is not incorporated or headquartered in the United States and is not organized under the laws of the United States.  *See* Castro Decl. ¶ 7.  Holdings has never had its principal place of business in the United States.  *Id.* ¶ 8.  Holdings owns no real property in the United States, much less the warehouses that are relevant here.  *See id.* ¶ 14.  It has no address, telephone listing, or fax number in the United States.  *Id.* ¶ 17.  Holdings does not receive income or pay taxes here.  *Id.* ¶¶ 20-21.  Holdings does not have employees or agents in the United States (or anywhere), *id.* ¶ 15, and it holds no regular meetings in the United States, *id.* ¶ 22.  Holdings has no operations or physical presence in the United States, *id.* ¶ 12, and it owns no U.S. subsidiaries, *id.* ¶ 11.  Notably, no allegations in the proposed TAC, conclusory or otherwise, contend that Holdings has contacts with the United

States that approximate a physical presence in the United States or otherwise would make it at home here.  Thus, there is no basis for the assertion of general jurisdiction over Holdings.  *See Goodyear*, 131 S. Ct. at 2856-57 (foreign subsidiary of U.S. corporation lacked contacts with North Carolina to justify general jurisdiction there because it was not registered to do business there and had no employees, offices, or bank accounts there, even though it sold a small percentage of products in North Carolina); *Sonera Holding*, 750 F.3d at 226 (general jurisdiction lacking over foreign defendant (citing *Daimler*, 134 S. Ct. 746)); *In re Roman Catholic Diocese*, 745 F.3d at 40 (general jurisdiction lacking where diocese "operates no office or facility" in forum, even though it had employees there); *Saudi v. Marine Atl., Ltd.*, 306 F. App'x 653, 655 (2d Cir. 2009) (general jurisdiction lacking where defendant "has no office in New York, no bank account or property in New York, and no employees permanently stationed in New York"); *Bodum U.S.A., Inc. v. Hantover, Inc.*, No. 11 Civ. 8702, 2012 WL 1309176, at *4 (S.D.N.Y. Apr. 16, 2012) (general jurisdiction lacking where defendant "owns no property in New York and has no offices, employees, bank accounts, post office boxes, telephone lines, or mailing addresses within the state").

## 2. *Holdings Has No Contacts In The United States Relating To Plaintiffs' Claims*

Plaintiffs also have not alleged facts to support the exercise of specific jurisdiction over Holdings.  Specific jurisdiction exists when "the defendant has 'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or related to' those activities."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal citation omitted).  This analysis "looks to the defendant's contacts with the forum," and jurisdiction "must arise out of contacts that the 'defendant *himself*' creates."  *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) (quoting *Burger King, supra*) (emphasis in both).  But plaintiffs do

not allege, and cannot show, that Holdings itself has purposefully directed any activities at the United States relating to plaintiffs' claim that defendants conspired to manipulate the LME's warehouse rules to profit from the contango on the LME exchange.

The reason for this is simple: Holdings is an investment holding company.  Castro Decl. ¶ 4.  It does not trade on any metals exchange.  It has no contracts with warehouses in the United States, does not itself derive revenue from any LME-approved warehouses in the United States, and has no employees who perform any functions at all, let alone any functions relating to LME-approved warehouses in the United States.  *Id.* ¶ 23.  The LME is responsible for the regulation of its warehouses, Ong-Seng Decl. ¶¶ 13-17, 23-25, and plaintiffs have not alleged otherwise. Thus, plaintiffs cannot assert specific jurisdiction over Holdings on the basis of any of Holdings's own conduct relating to or arising from plaintiffs' claims here.

### B. Holdings Is Not Subject To The Jurisdiction Of This Court On The Basis Of Its Relationship With The LME

Clearly recognizing the absence of any Holdings contacts with the United States either generally or related to the subject matter of this action, plaintiffs make allegations apparently designed to permit the Court to exercise jurisdiction over Holdings on the basis of its relationship with the LME.  Plaintiffs allege that HKEx, the LME, and Holdings hold out or refer to Holdings as the LME, TAC ¶ 83(b), (c), and that the LME and Holdings share some management and directors, TAC ¶ 83(c).   But those allegations are all characteristics common to holding companies and thus consistent with Holdings's role as a passive holding company.  From these allegations, plaintiffs assert that Holdings "owns and controls the LME", has no purpose except to "operate the LME for HKEx as a mere department", and that "LME Holdings and the LME are each other's agents and alter egos and LME Holdings is vicariously liable" for all acts of the

LME, TAC ¶ 83(d).  All of plaintiffs' allegations are woefully insufficient to confer jurisdiction over Holdings in this Court.[4]

1.    **The Supreme Court's Opinion in *Daimler* Eliminates Any Argument That A Court Can Exercise Jurisdiction Over A Foreign Parent On The Basis Of The Conduct Of Its Subsidiary In The Forum**

Plaintiffs' "vicarious liability" and "agency" allegations are not supported by any facts that would permit the attribution of the LME's conduct in the forum to Holdings.  But, if plaintiffs are attempting to argue that Holdings is subject to the jurisdiction of this Court because its alleged agent, the LME, is present in the forum, that argument is foreclosed by the Supreme Court's opinion in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014).  There, the Ninth Circuit had held that Daimler was subject to the general jurisdiction of a federal court in California because its subsidiary, MBUSA, functioned as Daimler's agent by conducting business there that was "continuous and systematic" and "important" to the parent (a test similar to the test for agency jurisdiction in the Second Circuit, *see, e.g.*, *Jazini*, at 184).  The Supreme Court, reversing, held that that conclusion would effectively nullify the limited jurisdiction of the federal courts and was fatally inconsistent with its holding in *Goodyear.  See also Sonera Holding B.V.* at 226 (expressing doubt as to whether the agency theory of jurisdiction "survive[s] in light of *Daimler*").[5]  Thus, following *Daimler,* plaintiffs' allegation that Holdings is liable for the conduct of the LME in the United States on an agency theory fails as a matter of law.[6]

---

[4] Plaintiffs also attempt to refer to the LME and Holdings jointly in their proposed TAC as "the LME."  The Court has already rejected this type of group pleading, *In re Aluminum Warehousing Antitrust Litig.*, No. 13-MD-2481 KBF, 2014 WL 4277510, at *38 (S.D.N.Y. Aug. 29, 2014), and plaintiffs are required to make specific allegations regarding Holdings to support personal jurisdiction over it.

[5] Plaintiffs also allege that Goldman Sachs held various shares of Holdings and that Goldman Sachs and JP Morgan affiliates still own Class B shares.  *See* TAC ¶ 79(b), (c).  To the extent that these allegations are meant to suggest an agency relationship between Holdings and other

### 2. Plaintiffs Have Not Alleged Any Facts Showing That The LME Is A Mere Department Or The Alter Ego Of Holdings

To avoid the well-established principle that a parent is not subject to jurisdiction wherever its subsidiaries may be found, plaintiffs assert that Holdings treats the LME as a "mere department" or "alter ego."  TAC ¶ 83(d).[7]  Plaintiffs' allegations in support of this claim are merely that Holdings owns the LME, has overlapping directors with the LME, and that the entities are referred to interchangeably on unidentified occasions.  *See* TAC ¶ 83(b), (c).  These allegations are not sufficient to show that the LME is a mere department or alter ego of Holdings.

Courts treat whether an entity is an alter ego for jurisdictional purposes and whether an entity is a "mere department" for jurisdictional purposes as essentially the same question.  *See, e.g.*, *Reers v. Deutsche Bahn AG*, 320 F. Supp. 2d 140, 150 (S.D.N.Y. 2004) ("By alleging that these subsidiaries are mere departments of [defendant], plaintiffs are alleging that the subsidiaries are not separate corporate entities at all, but rather alter egos . . ."); *SODEPAC, S.A. v. CHOYANG PARK in rem*, No. 02 CIV. 3927 (SAS), 2002 WL 31296341, at *4 (S.D.N.Y. Oct. 10, 2002) (citing the same test for "mere department or alter ego"); *see also Fagan v. Republic of Austria,* No. 08 CIV. 6715 LTS JCF, 2011 WL 1197677, at *17 (S.D.N.Y. Mar. 25, 2011) ("A

defendants or U.S. entities, *Daimler* likewise precludes the application of agency jurisdiction to those entities.

[6] While *Daimler* considered the jurisdictional analysis under the Due Process Clause of the Fourteenth Amendment under Fed. R. Civ. P. 4(k)(1), the analysis that applies to the Due Process Clause of the Fifth Amendment pursuant to Fed. R. Civ. P. 4(k)(2) is the same. *Chew v. Dietrich*, 143 F.3d 24, 28 n.4 (2d Cir. 1998) ("the due process analysis is basically the same under both the Fifth and Fourteenth Amendments"; "[t]he principal difference is that under the Fifth Amendment the court can consider the defendant's contacts throughout the United States, while under the Fourteenth Amendment only the contacts with the forum state may be considered"). Thus, the holding of *Daimler* controls here.

[7] It is unclear whether plaintiffs allege that the LME is a mere department of Holdings or of HKEx, but in either case their allegations fall far short of establishing personal jurisdiction over Holdings on such a theory, as demonstrated here and in HKEx's opposition to plaintiffs' motion for leave to amend.

court may exercise personal jurisdiction over a subsidiary based on its jurisdiction over the parent company only when the subsidiary is an 'alter ego' or 'mere department' of the parent company.").  The mere allegation of "a parent-subsidiary relationship . . . is insufficient, standing by itself, to establish personal jurisdiction over the foreign parent" as its alter ego. *L'Europeenne de Banque v. La Republica de Venezuela*, 700 F. Supp. 114, 124 (S.D.N.Y. 1988). Instead, "[s]ome additional factor is required, such as . . . treating the subsidiary as a mere department."  *Id.*; *Insight Data Corp. v. First Bank Sys., Inc.*, No. 97 CIV. 4896 (MBM), 1998 WL 146689, at *5 (S.D.N.Y. Mar. 25, 1998) (stating that to support "alter ego" allegations plaintiffs must show basis for attribution of acts of one entity to another by showing the other entity is a "mere department" and finding absence of allegations to support personal jurisdiction).

In determining whether a subsidiary is a "mere department" of its parent, courts "consider four factors . . . first, common ownership . . . ; second, financial dependency of the subsidiary on the parent corporation; third, the degree to which the parent corporation interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities; and fourth, the degree of control over the marketing and operational policies of the subsidiary exercised by the parent."  *Jazini*, 148 F.3d at 184-85 (internal quotation marks omitted).[8]  The only one of these factors that plaintiffs can meet is common ownership, which courts do not hold is sufficient to satisfy the "mere department" or alter ego test.

---

[8] The court in *Jazini* applied New York law to decide the question whether a subsidiary was a mere department of its parent, because its jurisdiction was founded upon the New York long-arm statute under Rule 4(k)(1).  But it is appropriate to use the analysis even where, as here, the question of jurisdiction is based upon the defendant's national contacts under Rule 4(k)(2).  *In re Magnetic Audiotape Antitrust Litig.*, 171 F. Supp. 2d 179, 186 (S.D.N.Y. 2001) (applying the "mere department" test under New York law because "whether a parent-subsidiary relationship is of the nature that the subsidiary's contacts can be imputed to the parent requires the same analysis whether it is a question of national contacts, as it is here, or state contacts"), *rev'd on*

Courts routinely reject the attempt that plaintiffs make here to attribute the contacts of an operating subsidiary to its passive holding company under a "mere department" or alter ego theory. Showing that entities ignore their corporate forms is particularly difficult with respect to an investment holding company like Holdings because a typical holding company serves an investment function and is not an operating business. *See Gurvey v. Cowan, Liebowitz, & Latman, PC*, No. 06 Civ.1202, 2009 WL 691056, at *3 (S.D.N.Y. Mar. 17, 2009); *Gallelli v. Crown Imports, LLC*, 701 F. Supp. 2d 263, 272 (E.D.N.Y. 2010) ("Where the defendant over which jurisdiction is sought to be exercised is a holding company, the business of that company is the business of investment . . . [and] it cannot be said that the business of the parent is carried out by the subsidiary."). Plaintiffs must therefore allege *activities of the holding company* that suggest its relationship to a subsidiary permits a court to impute the subsidiary's jurisdictional contacts. *See Gurvey*, 2009 WL 691056, at *2-5 (dismissing Sherman Act claims against holding company where plaintiff "made very little effort to distinguish between the activities of the holding company and those of the subsidiaries and has failed to demonstrate [any] justification for ignoring the corporate forms between entities").

In *NovelAire Technologies, L.L.C. v. Munters AB*, No. 13 CIV. 472 CM, 2013 WL 6182938 (S.D.N.Y. Nov. 21, 2013), the court rejected the plaintiffs' attempt to portray a passive holding company as an operating company through the activities of its subsidiary. 2013 WL 6182938, at * 6. It rejected the argument that overlapping directors and management suggested that the subsidiary was the holding company's mere department. *Id.* at * 8. The court recognized that the defendant only "engage[d] [in] the business of a holding company" by "own[ing] other companies." *Id.* at * 4. The court held that the defendant was "merely a holding

other grounds*, *Tex. Int'l Magnetic, Inc. v. BASF Aktengesllschafft*, 31 F. App'x 738 (2d Cir. 2002).

company" and that jurisdiction over it based on its ownership of a New York corporation would violate due process.  *Id.* at \*11-12 (citing *Central States, S.E. & S.W. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943–44 (7th Cir. 2000)).

In *JLB Equities, Inc. v. Ocwen Financial Corp.*, 131 F. Supp. 2d 544 (SDNY 2001), the court reiterated that "the mere fact that [the foreign defendant] is the [local subsidiary's] holding company is not sufficient to establish personal jurisdiction over [the foreign defendant]."  *Id.* at 549-50.  In that case, the plaintiff alleged that the holding company and its subsidiary had overlapping directors and officers, that the parent owned 100% of the subsidiary, and that the two published consolidated annual reports and did not distinguish between the two entities on their shared website.  *Id.*  The court rejected such allegations as sufficient to show that the subsidiary was a mere department of the parent.  *Id.*

In *Gallelli*, the plaintiffs alleged common ownership, overlapping directors, and references in press releases to the holding company and its subsidiary jointly.  701 F. Supp. 2d at 274.  But the overlapping directors were "of little consequence" and "informal references" to the holding company and its subsidiary by a single term did not permit the court to ignore that the entities "scrupulously adhere[] to corporate formalities."  *Id.*  The court dismissed the claims against the holding company defendant and held that "the facts establish clearly that [the defendant] is a holding company managing investments of companies that are independently" operating their businesses.  *Id.* at 275.  The fact that holding company corporate structure was "completely legitimate" did not warrant imputation of contacts under a mere department or agency theory of jurisdiction.  *Id.*

Here, while Holdings is an investment holding company and holder of 100% of the stock of the LME, plaintiffs' allegations satisfy none of the other "mere department" factors.  In fact,

16

their allegations are directly contradicted by the evidence that Holdings and the LME have maintained their corporate separateness, both before and after the acquisition of both entities by HKEx.   As shown in the Castro and Ong-Seng Declarations, the LME has its own finance department and the two entities maintain separate records.   Castro Decl. ¶ 30; Ong-Seng Decl. ¶ 22.   Holdings and the LME maintain separate bank accounts.   Castro Decl. ¶ 28.   Holdings does not guarantee the LME's loans or credit arrangements.   *Id*. ¶ 29.   Holdings does not pay the salaries of the employees or executives of the LME.   *Id*. ¶ 31.   The two companies continue to maintain their separate identities after the acquisition.   *Id*. ¶ 25.   The LME has over 300 employees and contractors dedicated solely to the LME's business, Ong-Seng Decl. ¶ 19, and has its own Chief Executive Officer, Chief Operating Officer, and legal, human resources, and regulatory departments, *id*. ¶ 22.   The LME operates its day-to-day business without financial assistance from Holdings.   *Id*. ¶ 21.

Both Holdings and the LME also observe all of the formal requirements of distinct corporate entities: they have separate Boards, Castro Decl. ¶¶ 33-34, conduct separate Board meetings, *id*. ¶¶ 33-34, and have distinct Articles of Association, *id*. ¶ 27.   But perhaps most important, Holdings is merely an investment holding company, *id*. ¶ 4, and it has no involvement in the management or oversight of LME-approved metal warehouses, *id*. ¶ 23.   The Castro and Ong-Seng Declarations also make clear that LME personnel regulate LME-approved warehouses—Holdings has no personnel—and that any corporate activities associated with being a holding company are conducted by Holdings entirely within the United Kingdom.   *See* Ong-Seng Decl. ¶¶ 13-17, 23-25; Castro Decl. ¶ 24.

Plaintiffs' allegations regarding Holdings are entirely consistent with the ordinary relationship of an investment holding company and its subsidiary.   As in *Gallelli and JLB*

*Equities*, plaintiffs here allege only common ownership between Holdings and the LME, overlap in the directors, and purported reference to the two entities jointly in unidentified publications. *See* TAC ¶ 83(b), (c).   Standing alone, those allegations are insufficient to support personal jurisdiction.  *See Gallelli*, 701 F. Supp. 2d at 274; *JLB Equities*, 131 F. Supp. 2d at 549-50. Adding the facts established by the Castro and Ong-Seng Declarations to the analysis makes it indisputable that plaintiffs cannot establish that the LME is a mere department or alter ego of Holdings.

### C.   This Court Should Reject Plaintiffs' Attempt To Manufacture Personal Jurisdiction Over Holdings On The Basis Of The Alleged Conspiracy Or Its Effects

#### 1.   Plaintiffs Cannot Obtain Jurisdiction Over Holdings On The Basis Of The Supposed Effects Of Its Conduct In The United States

Plaintiffs also apparently claim that this Court has jurisdiction over Holdings because Holdings was a participant in the alleged conspiracy, which they say had effects in the United States.  *See* TAC ¶ 31.  Plaintiffs previously asserted this basis for jurisdiction based upon the so-called "effects test" for demonstrating specific personal jurisdiction set out in *Calder v. Jones*, 465 U.S. 783, 789 (1984).  *See* Plfs. Opp. to Holdings's Motion to Dismiss, Dkt. No. 390.  But the Second Circuit has long warned that this test "must be applied with caution, particularly in an international context."  *See Leasco Data Processing Equip. Corp. v. Maxwell,* 468 F.2d 1326, 1341 (2d Cir. 1972), *abrogated on other grounds by Morrison v. Nat'l Austl. Bank Ltd.*, 130 S. Ct. 2869 (2010).  To invoke this basis for personal jurisdiction, a plaintiff must allege that a defendant's "intentional, and allegedly tortious, actions" were "expressly aimed" at the United States.  *Calder*, 465 U.S. at 789; *In re Terrorist Attacks on September 11, 2001*, 538 F.3d 71, 95 (2d Cir. 2008), *abrogated on other grounds*, *Samantar v. Yousuf*, 560 U.S. 305, 130 S. Ct. 2278, 176 L. Ed. 2d 1047 (2010).

This Court has recognized that a plaintiff seeking to rely upon the "effects test" must allege that the defendant "engaged in an affirmative act directed at (or into) the United States." *Tarsavage v. Citic Trust Co., Ltd.,* 3 F. Supp. 3d 137, 146-47, (S.D.N.Y. 2014) (Forrest, J.).  It is not enough to allege merely that a defendant could foresee an effect in the United States; instead, the defendant's actions themselves must be directed specifically at the United States.  *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 295 (1980) ("'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause").  Accordingly, plaintiffs here must show intentional tortious conduct by Holdings that Holdings itself aimed at the United States.  Nothing in the proposed TAC comes close.

Indeed, plaintiffs do not make a single allegation about Holdings's conduct, nor could they, because Holdings is only an investment holding company.  Holdings is not alleged to have taken any affirmative act, much less an act aimed at the United States.  As a matter of law, plaintiffs' allegations therefore cannot satisfy the effects test for the exercise of personal jurisdiction over Holdings.  *Tarsavage*, 3 F. Supp. 3d 137, 146-47; *Calder*, 465 U.S. at 789; *In re Satyam Computer Servs. Ltd. Sec. Litig.*, 915 F. Supp. 2d 450, 484 (S.D.N.Y. 2013) (allegation that the parent failed to change the conduct of the subsidiary was insufficient to show conduct by the parent directed at the United States).

### 2.    Plaintiffs Cannot Obtain Personal Jurisdiction Over Holdings On The Basis Of The Contacts Of Alleged Co-conspirators

Plaintiffs also suggest that this Court would have jurisdiction over Holdings merely because of its alleged participation in the implausible conspiracy that they describe, based on the acts of its alleged co-conspirators.  TAC ¶ 31.  In order to support such a theory of conspiracy jurisdiction, a plaintiff must (1) make a prima facie showing of a conspiracy, (2) allege specific facts that warrant an inference that the defendant was a member of the conspiracy, and (3) set

19

forth evidentiary facts that connect the defendant to transactions that occurred in the United States.  *Id.* at 484.  To fulfill the latter two elements, courts look to whether a plaintiff has shown that the "activity of co-conspirators . . . was to the benefit of [the foreign] conspirators" and was taken "at the direction or under the control or at the request of the [foreign] defendant." *Tarsavage*, 3 F. Supp. 3d at 147-48.  Plaintiffs fail on all counts.

First, plaintiffs fail to make a prima facie showing of a conspiracy because the conspiracy that they allege still makes no economic sense, for all the reasons identified in Part II below and in Defendants' Joint Memorandum in Opposition to Plaintiffs' Antitrust Conspiracy Claims. Second, plaintiffs have not alleged any facts to connect Holdings to the alleged conspiracy. These failings foreclose any attempt to premise personal jurisdiction over Holdings on a conspiracy theory of jurisdiction.

But plaintiffs also do not allege that Holdings itself took or directed *any* actions *in the United States*.  At most, plaintiffs allege that Holdings owned a London subsidiary that conducted activities in the United States.  In *In re Satyam*, the court rejected allegations that a defendant was subject to co-conspirator jurisdiction because it "had the ability to prevent" but failed to stop allegedly unlawful conduct after it acquired the subsidiary in question.  915 F. Supp. 2d at 485.  Here, as in *In re Satyam*, even if plaintiffs imply that Holdings had the ability to change its subsidiary's policies or conduct, that by itself is legally insufficient to show that the LME acted on its behalf or at its direction.  915 F. Supp. 2d at 484.  Plaintiffs certainly allege no facts suggesting that Holdings directed any other alleged co-conspirator to act on its behalf. Thus, they do not come close to pleading co-conspirator jurisdiction.

### D.     The Exercise Of Personal Jurisdiction Over Holdings Would Be Unreasonable

Holdings is a holding company in the United Kingdom with no United States contacts or presence, and is not alleged to have taken or directed any acts in furtherance of the alleged conspiracy.  Even if there were some basis to find jurisdiction over Holdings,  exercising such jurisdiction  would be unreasonable here.  In assessing reasonableness, courts consider "[1] the burden on the defendant, [2] the interests of the forum State; . . . [3] the plaintiff's interest in obtaining relief, [4] the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and [5] the shared interest of the several States in furthering fundamental substantive social policies."  *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 172-73 (2d Cir. 2010); *see also Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal.*, 480 U.S. 102, 113 (1987).  The Supreme Court has cautioned courts that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field."  *Asahi*, 480 U.S. at 115 (citation omitted).

The above factors weigh heavily against jurisdiction here.  Holdings is domiciled in London, and there is an obvious burden to Holdings in having to defend itself against litigation in New York, where it has no offices or employees—especially where, as here, it took no actions in the United States and seems to be involved in this litigation only because of its passive ownership of the LME, an entity which has now been dismissed on the basis of its sovereign immunity.  Under these circumstances, haling Holdings into this Court would be unreasonable.[9]

---

[9] Without waiving its personal jurisdiction argument here, in the event that the Court finds that it has personal jurisdiction over Holdings, Holdings respectfully requests that the Court deny plaintiffs leave to amend as to their proposed Counts I, II and IV-IX for the reasons set forth in defendants' joint memoranda filed today: Defendants' Joint (1) Opposition to the First Level Purchasers and Mag and Agfa's Motion for Leave To Amend, and (2) Motion To Dismiss Kodak's Complaint for Lack of Antitrust Standing; Defendants' Joint Opposition to Plaintiffs'

### E.     There Is No Basis For Jurisdictional Discovery

Plaintiffs are not entitled to jurisdictional discovery to see if they can satisfy the standards for personal jurisdiction.   In permitting plaintiffs to seek leave to amend, the Court warned plaintiffs that "they should take into account the arguments raised regarding personal jurisdiction."   Dkt. No. 571 at 81.   But plaintiffs still fail to present a colorable prima facie claim for personal jurisdiction.

"[W]here the plaintiff has failed to make out a prima facie case, courts have displayed an unwillingness to grant additional discovery on jurisdictional issues."   *Langenberg v. Sofair*, No. 03 cv 8339, 2006 WL 2628348, at *6 (S.D.N.Y. Sept. 11, 2006); *Xiu Feng Li v. Hock*, 371 F. App'x 171, 175 (2d Cir. 2010) ("Since we conclude that there was no prima facie case for jurisdiction, we also find that the district court did not err in declining to engage in jurisdictional discovery."); *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 255 (2d Cir. 2007) ("We conclude that the district court acted well within its discretion in declining to permit discovery because the plaintiff had not made out a prima facie case for jurisdiction."); *see also Jazini*, 148 F.3d at 186 (difficulty in pleading jurisdiction against foreign parent corporation is no basis to make an exception for jurisdictional discovery that ignores separate corporate forms); *Tymoshenko v. Firtash*, No. 11-cv-2794 (KMW), 2013 U.S. Dist. LEXIS 43543, at *21-22 (S.D.N.Y. Mar. 26, 2013) (denying jurisdictional discovery in absence of rationale to connect defendant to U.S.). Plaintiffs have not given this Court any reason to differ from these precedents.

---

Antitrust Conspiracy Claims; and Defendants' Joint Opposition to the First Level Purchaser Plaintiffs' and Mag and Agfa's Motions to Amend Their Complaints' State Law Claims and in Support of Their Motion to Dismiss Kodak's State Law Claims.

II.  **EVEN IF THE COURT HAD PERSONAL JURISDICTION OVER HOLDINGS, IT SHOULD STILL DENY PLAINTIFFS LEAVE TO AMEND BECAUSE PLAINTIFFS AGAIN FAIL TO PLAUSIBLY ALLEGE THAT HOLDINGS WAS PART OF ANY CONSPIRACY**

Even if the Court concludes that it has jurisdiction over Holdings, it should still deny plaintiffs leave to amend to name Holdings as a defendant because the proposed complaint still does not allege *any* plausible conspiracy, much less one in which Holdings supposedly participated or for which Holdings could be held liable.

A.  **The Alleged Conspiracy Still Does Not Make Economic Sense**

As a preliminary matter, as set forth in more detail in Defendants' Joint Memorandum in Opposition to Plaintiffs' Antitrust Conspiracy Claims, plaintiffs have failed to remedy the fatal defect that caused the Court to dismiss their complaint the first time:  the alleged conspiracy still "does not make economic sense—that is, it is not economically plausible without more—for defendants to have conspired to achieve an end that the law of supply and demand, combined with the passage of time, would have itself achieved in the absence of a conspiracy."  *In re Aluminum Warehousing Antitrust Litig.*, 2014 WL 4277510, at *29 (S.D.N.Y. Aug. 29, 2014). In this latest complaint, plaintiffs still fail to plausibly allege why defendants had any rational economic necessity or motive *to conspire* to create these market conditions when, as the Court recognized, the same conditions would have developed in the absence of a conspiracy.  The Court should deny plaintiffs leave to amend to state the conspiracy claims in Counts I, II and IV-VIII against Holdings for the reasons set forth in Defendants' Joint Opposition to Plaintiffs' Antitrust Conspiracy Claims filed concurrently with this brief.

B.  **Even If The Proposed Complaint Plausibly Alleged A Conspiracy, It Still Fails To Plausibly Allege That Holdings Joined That Conspiracy**

Even if the Court concludes that plaintiffs have plausibly alleged a conspiracy involving the other defendants, it should still deny plaintiffs leave to amend to state claims against

Holdings because the proposed complaint contains no allegations to suggest that Holdings took any action to join or further that alleged conspiracy.

The proposed amended complaint is completely devoid of allegations that specify the role that Holdings purportedly played in the alleged conspiracy. Indeed, plaintiffs concede the absence of allegations specific to Holdings by asserting that all references to "the LME" in the proposed complaint incorporate Holdings as well. *See* TAC ¶ 83(d). But plaintiffs must plausibly allege that *each* defendant they seek to hold liable for a conspiracy "knowingly became a member of that conspiracy with the intent to further its purposes." ABA Modern Federal Jury Instructions in Civil Antitrust Cases at B-4 (2005 ed.); *In re Aluminum Warehousing*, 2014 WL 4277510, at *38 (plaintiffs "must be able separately to state a claim against each and every defendant joined in this lawsuit") (citing *Twombly*, 550 U.S. at 555-56); *Concord Assocs., L.P. v. Entm't Prop. Trust*, No. 12-cv-1667 (ER)2014 WL 1396524, at *23 (S.D.N.Y. Apr. 9, 2014) ("[A] complaint must plausibly suggest that the individual defendant actually joined and participated in the conspiracy.") (internal quotations and citation omitted). At a minimum, plaintiffs must allege facts to make it plausible that each defendant engaged in "concerted action", meaning that each made a "conscious commitment to a common scheme designed to achieve an unlawful objective." *Monsanto Co. v. Spray-Rite Serv. Co.*, 465 U.S. 752, 764 (1984). To plead concerted action requires plausible allegations of an agreement between a minimum of two separate decision makers. *Cf. Am. Needle, Inc. v. NFL*, 560 U.S. 183, 195 (2010) (holding that the key to finding concerted action is whether the arrangement "joins together separate decision makers," such that an agreement among "'separate economic actors pursuing separate economic interests . . . deprives the marketplace'" of competition among them) (citations omitted). Because the LME is Holdings's subsidiary, they are not two separate

decision makers as a matter of law for purposes of alleging participation in a conspiracy. *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984). That means that plaintiffs were required to allege, at a minimum, facts that would make it plausible that Holdings agreed with at least one of the trader or warehouse defendants to join the supposedly pre-existing scheme. Just as this Court recognized before, the complaint still contains no such allegations at all, much less plausible ones.

### C. The Proposed Complaint Fails To Allege That Holdings Is Liable For Any Conduct Of The LME

Obviously recognizing their inability to plead facts suggesting ties between Holdings and the alleged conspiracy, plaintiffs allege that the LME conspired with the warehouse and trader defendants and that Holdings is liable for the LME's participation in the conspiracy because it owned the LME. As set forth above and more fully in the separate joint defendants' brief, the proposed complaint does not come close to plausibly alleging that the LME—an instrumentality of the government of the United Kingdom—conspired with anyone. But even if the proposed complaint plausibly alleged the LME's participation in the conspiracy, plaintiffs do not allege any facts that would state a claim against Holdings for that conduct.

Because it is a "general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries," *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (internal quotation marks omitted), plaintiffs can only seek to hold Holdings liable for the supposed acts of the LME if they plausibly allege facts showing (1) that Holdings dominates the LME to the point where the Court should pierce

25

Holdings's corporate veil, or (2) that Holdings is vicariously liable for the LME's conduct. Plaintiffs' allegations in the proposed complaint do not come close to meeting either standard.[10]

### 1. Plaintiffs Do Not Allege Facts To Support Piercing the Corporate Veil

The proposed complaint does not allege any facts that would allow the Court to pierce the corporate veil to hold Holdings liable for the actions of the LME. "To overcome 'the presumption of separateness afforded to related corporations', Plaintiffs must come forward with 'the showing of actual domination required to pierce the corporate veil.'" *Dejesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996) (quoting *Williams v. McAllister Bros. Inc.*, 534 F.2d 19, 22 (2d Cir. 1976)). To determine whether a plaintiff has alleged that a parent company exerts actual domination over its subsidiary, "courts look to a variety of factors, including the intermingling of corporate and [shareholder] funds, undercapitalization of the corporation, failure to observe corporate formalities such as the maintenance of separate books and records, failure to pay dividends, insolvency at the time of a transaction, siphoning off of funds by the dominant shareholder, and the inactivity of other officers and directors." *LaCourte v. JP Morgan Chase & Co.*, No. 12 Civ. 9453 (JSR), 2013 WL 4830935, at *6 (S.D.N.Y. Sept. 4, 2013) (internal quotation marks and citation omitted).

Plaintiffs fail to allege that *any* of these facts exist for Holdings and the LME. Instead, as noted above, they merely allege that Holdings owns the LME and that the two entities share directors and management. TAC ¶ 83(c). But it is well-established law that alleging overlap of mangers or directors is not enough to pierce the corporate veil. *See, e.g.*, *Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 975 F. Supp. 2d 392, 404-05 (S.D.N.Y. 2013) (explaining that

---

[10] Holdings' status as a holding company does not affect the legal standards that govern whether plaintiffs allege a plausible basis for veil-piercing and vicarious liability. *See, e.g.*, *Harte v. Ocwen Financial Corp.*, No. 13-CV-5410 (MKB), 2014 WL 4677120, at *18-19 (E.D.N.Y. Sept. 19, 2014).

"[i]t is well established law that allegations of mere shared management, shared corporate principles, or a parent's ownership and operation of a subsidiary—even exclusively for the parent's gain—do not merit piercing the corporate veil"); *Kingston Dry Dock Co. v. Lake Champlain Transp. Co.*, 31 F.2d 265, 267 (2d Cir. 1929) ("Control through the ownership of shares does not fuse the corporations, even when the directors are common to each.").

### 2.     Plaintiffs Do Not Allege Facts To Support Vicarious Liability

The proposed complaint also fails to allege facts necessary to support a claim of vicarious liability because it contains no plausible factual allegations that Holdings ever intended, much less authorized, the LME to act as an agent on behalf of Holdings.  "Consistent with principles of corporate distinctiveness, an obligation does not become the obligation of the parent under the doctrine of agency just because the parent owns the subsidiary's stock." *Maung Ng We v. Merrill Lynch & Co.*, No. 99 Civ. 9687 (CSH), 2000 WL 1159835, at *4 (S.D.N.Y. Aug. 15, 2000).  The agency theory of liability requires, at a minimum, plausible allegations that the principal (here supposedly Holdings) intended and empowered the agent (here supposedly the LME) to act on the principal's behalf to bind the principal, for example by signing legal contracts to which the principal would be bound. *See, e.g.*, *id.* at *5 (holding plaintiffs had failed to plead vicarious liability claim against parent based on actions of its subsidiary); *Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 89-90 (S.D.N.Y. 2010) (same); *LaCourte* 2013 WL 4830935, at *5 (same).  Thus, an indispensable element of an agency theory is that "the actions taken by the purported agent are taken on behalf of and for the benefit of the principal—*not the agent.*" *Merrill Lynch & Co.*, 2000 WL 1159835, at *9 (emphasis added).

The proposed complaint does not allege that Holdings empowered the LME to act for the benefit and on behalf of Holdings or that the LME ever did so, nor would such an allegation make sense.  The proposed complaint does not allege that Holdings is anything more than an

investment holding company, and the business of such a company is distinct from that of its operating subsidiaries.  *See Gurvey*, 2009 WL 691056, at *3; *Gallelli*, 701 F. Supp. 2d at 272. The complaint does not (and cannot) allege that Holding plays a role with respect to any of the metal in LME-approved warehouses.  Because plaintiffs do not and cannot allege that Holdings has a role in the regulation of LME-approved warehouses, plaintiffs cannot establish that the LME made decisions with respect to such warehouses for the benefit or on behalf of Holdings.

## CONCLUSION

For the foregoing reasons, Holdings respectfully requests that the Court deny plaintiffs' motion for leave to amend as futile.

Dated:  New York, New York
        December 8, 2014

Respectfully submitted,

/s/ Margaret M. Zwisler
Margaret M. Zwisler (admitted *pro hac vice*)
(*margaret.zwisler@lw.com*)
William R. Sherman
(*william.sherman@lw.com*)
Jennifer L. Giordano
(*jennifer.giordano@lw.com*)
LATHAM & WATKINS LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004
Telephone:  (202) 637-2200
Facsimile:  (202) 637-2201

*Attorneys for Defendant LME Holdings Limited*